B. F. ELLIOTT, Administrator, et als. v. R. H. WHEDBEE, et als.

*Parol evidence to vary a written Contract—Insurance—Assignment of Policy—Parties.*

1. Parol evidence is incompetent to vary, explain, or contradict a written instrument. So where an insurance company contracted in writing to pay a sum of money to the personal representative of the insured, parol evidence is not admissible to show that it was intended that the sum should be paid to certain of his children.

2. Where the by-law of an insurance company allowed the holder of a policy to designate the beneficiaries, by endorsing on the back of the policy the names of such beneficiaries, which endorsement was to be signed and witnessed; *It was held,* that a designation could not be made by the insured, by merely writing the names of the beneficiaries in the blank prepared on the policies for that purpose, but without signing it.

3. Where a policy of insurance is payable to the personal representative of the deceased, his administrator may maintain an action for the money, against some of the next of kin who have received it.

4. Where, in such case, the amount of the policy has been paid to some of the next of kin of the insured, and the administrator sues them to recover the amount, if the estate is solvent, and the money is not needed for the payment of debts, the defendants are entitled to retain their distributive shares, and the administrator can only recover the excess.

(*Donaldson* v. *Benton*, 4 Dev. &. Bat., 435; *Etheridge* v. *Palin*, 72 N. C., 213; *Wilson* v. *Sandifer*, 76 N. C., 347; *Baker* v. *The Railroad*, 91 N. C., 308; *Rogers* v. *Chestnut*, 92 N. C., 81, cited and approved).

This was a CIVIL ACTION, tried before *Shipp, Judge,* at Spring Term, 1885, of CHOWAN Superior Court, upon the following case agreed, to-wit:

John W. Nowell died intestate in Chowan county in 1883, leaving him surviving, Cornelia C. Nowell, his widow, and the plaintiff J. W. Nowell, Jr., and the three *feme* defendants, Julia, wife of R. H. Whedbee, Ada Nowell, and Sallie, wife of W. H. Elliott, none of whom had any estate, and all are now of full age, except the plaintiff J. W. Nowell, Jr., who was born since the death of his father. Letters of administration on his estate were granted to the plaintiff B. F. Elliott.

Before his death, the intestate procured a certificate of membership in the Christian Brotherhood, of Norfolk, Virginia, an insurance organization, of which the following is a copy.

No. 956.                                                    CLASS 1.

THE CHRISTIAN BROTHERHOOD.

*Benefit Certificate.*

Know all men by these presents, that John W. Nowell is this day admitted a member of the *Christian Brotherhood,* entitled to all the benefits of Class No. One, and no other, as the same may appear. In case of the death of the said John W. Nowell, being at the time of his decease a member hereof in good standing and repute, and not in arrears to said Brotherhood in annual dues, assessments, or otherwise, the said Brotherhood hereby agrees to pay to the personal representative or representatives of said John W. Nowell, or to the person or persons herein designated by the said John Nowell to receive the same, as the case may be, a sum of money aggregating in all not more than the sum of one thousand dollars. *    *    *    *

(Signed)          JOHN W. NOWELL.
Countersigned by          RICHARD H. JONES,
J. H. GARRETT, *Agent.*          *General Secretary.*

On the back of this policy there was a printed form for the designation of the beneficiaries, [which was as follows: " I

desire and direct you to pay all sums of money due and owing my estate, at the time of my death, by reason and virtue of this certificate, to            , of the State of

Witness:                              Signature of Holder."

The blank after the word "to" was filled in, in the handwriting of the intestate, with, *"my three daughters, Sallie, Julia and Ada,"* but it was not signed by the intestate, nor was there any witness to the same.   At the time of the application to the agent of the said Brotherhood for the certificate, the intestate said to him that he desired to procure the same for his said three daughters, and at the time of making the above endorsement, he called it to the attention of his daughter, Ada Nowell, and gave his reasons why he intended it for his three daughters.   At the death of Nowell, the said certificate was found among his papers and effects, and in the condition exhibited.   The defendants, other than Elliott and wife, took possession of the same, and demanded payment thereof of the company.

The officers of the company said they thought the designation sufficient, but declined to pay, because of the adverse claim set up by the plaintiff Elliott, administrator, &c.   By consent of the parties, plaintiff and defendant, the money due by the Brotherhood, on said certificate, was collected by the defendants, and deposited in Bank, to await the determination of this action.

In a few weeks after the death of Nowell, the plaintiff John W. Nowell, Jr., was born.   John W. Nowell, Sr., took out the policy in February, 1882, died in February, 1883, and his son John was a child of his second marriage.

One of the by-laws of the corporation was, that " members of the society may issue their certificates to whomsoever they may choose, or they may designate the person or persons to whom payment shall be made after death."

The plaintiffs claim that the money belongs to Elliott, the administrator of Nowell, to be distributed under the statute. Whedbee and wife, and Ada, claim that it belongs exclusively to Sallie, Julia, and Ada.

The estate of Nowell is solvent, and this fund is not necessary to pay debts.

If the opinion of the Court shall be in favor of the plaintiffs, judgment shall be rendered in favor of B. F. Elliott, administrator, for $699.85, and interest from, 1884, otherwise for the defendants.

The Court rendered judgment in favor of the defendants, and the plaintiffs appealed.

*Mr. W. D. Pruden,* for the plaintiffs.
*Mr. L. L. Smith,* for the defendants.

ASHE, J. (after stating the facts). The Christian Brotherhood was a corporation chartered by the General Assembly of Virginia, upon the mutual insurance principle. It was made by the charter, capable in law and equity, to sue and be sued, to plead and be impleaded, contract and be contracted with, and use a common seal, &c. In the second paragraph of the charter, it was declared : "The objects of this brotherhood are entirely benevolent, and shall be established in the city of Norfolk, State of Virginia, for the purpose of encouraging a high standard of morality, lightening the burdens of the poor, abating privation and suffering, promoting industry, economy and needed reform, and providing relief for widow and orphans by voluntary contributions." By the fifth paragraph it was authorized to adopt such by-laws as may be necessary for the government of the Brotherhood.

The only by-law bearing on the question before us, and the only one referred to by the counsel for the defendant, is as follows:

" Members of this Society may issue their certificates of membership to whomsoever they may choose, or they may designate the person or persons to whom payment shall be made after death."

The question presented by the record for our considera-tion, is whether the defendants, the three daughters of the insured, John W. Nowell, are entitled to hold the whole of the fund paid on his policy, or whether the plaintiffs, the widow and posthumous son of the insured, are not entitled to share equally with the defendants in the fund, and if so, whether the adminis-trator may not recover the same for their use.

The plaintiffs insist that under the by-law above cited, the representative of J. W. Nowell, that is, his administrator, is des-ignated in the policy as the person who is to take the amount due upon the death of Nowell, and the defendants contend, that notwithstanding the policy was made payable to the representa-tive of the insured, the insured had the right under the charter and by-law, to designate the person or persons to whom the pol-icy should be paid, which he had done, by filling in the names of his three daughters in the blank form found on the back of the policy.

We will first consider the question, whether by the designa-tion on the back of the policy, or other matter connected with the transaction, the right to the policy was transferred to the defendants.

There is no provision in the charter, nor any by-law that has been brought to our notice, that the policy issued by the Broth-erhood must be taken in the name or for the benefit of the widow, children, or family of the insured. The contract evidenced by the policy, is to pay to the *personal representative* of the insured. That is the agreement. It is in writing and under the seal of the corporation, and the evidence offered by the defendants to show that the insured intended the policy for the defendants, was insufficient for the purpose for which it was offered. For parol evidence is not admissible to vary, explain, or contradict an agreement in writing. *Donaldson* v. *Benton*, 4 Dev. & Bat., 435 ; *Etheridge* v. *Palin*, 72 N. C., 213 ; *Wilson* v *Sandifer*, 76 N. C., 347.

But it is contended that if the parol evidence tending to show the intention of the insured is not sufficient, the policy and all interest in it was transferred to the defendants by the designation indorsed on the back of the instrument.

But we are of the opinion that it did not have that effect, for several reasons. First, because it was incomplete. The by-law permitted the assignment and designation of the person to whom it was to be paid, but the company prescribed the mode by which it should be done, by placing the blank form in print upon the back of the policy, with the place designated for the signature of the holder and for the name of the witnesses, which shows that it required the assignment, as well as designation, to be signed by the holder, and attested by a subscribing witness. In this case, it was neither signed by the holder nor attested by a witness. The holder of the policy, when he filled up the blank in the form for designation with the names of his three daughters, could not help seeing below the printed form, the words: "Signature of holder," and "witness." This omission to sign, under the circumstances, leads to the conclusion that it was done with a purpose, and that he had some reason for not completing, at that time, the designation, by signing his name and having it witnessed. The designation bears no date. It may have been, that he was then contemplating his second marriage, or if married, that he was expecting the birth of the child, with which his wife was *enceinte* at the time of his death, and he forebore to complete the designation in the mode prescribed by the company, reserving to himself the right to modify it, according to circumstances that might arise. But whatever may have been his motive, he left it incomplete, and the mere attempt to make the designation, which was not consummated, could have no effect upon the original contract.

The form for the designation of the person to whom the holder might direct the policy to be paid, was evidently prescribed by the company for its own protection; that upon the death of the holder there might be no question as to the person

to whom it was to be paid, and not leave it to the uncertainty of parol evidence. Therefore, the form of designation was prescribed, and it required that it should be signed by the holder, and attested by a witness or witnesses. But in this case, it was not complied with, and the designation having been thus put out of the way, the question arose, can the action be maintained by the administrator of John W. Nowell, deceased? We can see no reason why it cannot. The express terms of the contract, as manifested by the certificate, is that the amount due upon the policy, on the death of the holder, shall be paid to his representative or representatives, and there is nothing in the charter or by-laws, that makes it payable, even by implication, to any one else; for by the by-law above cited, the holder may assign the policy to whomsoever he may choose.

There is no provision in the charter or by-laws indicating, as in many other corporations of like kind, some of which have been referred to in the argument of the defendants' counsel, that the policies issued by the company shall enure to the benefit of the "widow, children or family" of the insured. The only reference in the charter to "widows and children," is the declaration that one of the objects of the incorporation, is for the relief of "*widows and orphans*" by *voluntary* contributions.

Contributions by whom? It is susceptible of no other construction, than that it means contributions made by the association for the relief of "widows and orphans," "*by lightening the burdens of such as are poor, and abating their privation and suffering.*"

Our opinion is, the administrator had the right to maintain the action, but as it is agreed that the fund in controversy is not needed for the payment of the debts of the intestate, and when received must go in distribution among the next of kin, who are the defendants and the plaintiffs other than the administrator, and in as much as the fund is in the possession of the defendants, the administrator should have judgment only for two-fifths thereof, the shares going to the two plaintiffs who are next

of kin of the deceased, and the defendants shall be allowed to retain their shares, to-wit, three-fifths of the fund, for as was said in *Baker* v. *Railroad,* 91 N. C., 308, "there is no reason why it should be required to be paid, when it must be returned;" and see *Rogers* v. *Chestnut,* 92 N. C., 81.

Our opinion is, there was error in the judgment of the Superior Court, and the plaintiff Nowell, as administrator, is entitled to judgment as indicated in this opinion. Let this be certified to the Superior Court of Chowan, that the case may be disposed of in conformity to this opinion.

Error.                                                                       Reversed.