# CASES

## ARGUED AND DETERMINED

#### IN THE

# United States Circuit and District Courts.

---

### SUPREME CONCLAVE, ROYAL ADELPHIA, *v.* CAPPELLA *et al.*

*(Circuit Court, E. D. Michigan.  January 20, 1890.)*

1. MUTUAL BENEFIT INSURANCE—RIGHTS OF BENEFICIARY.
   In cases of policies of insurance or benefit certificates issued by mutual benefit societies, the beneficiary has no vested interest in the certificate until the death of the insured member.  Up to this time the insured may change his designation of beneficiary at will, and against the consent of such beneficiary.

2. SAME—CHANGE OF BENEFICIARY.
   The general rule that the insured is bound to make such change of beneficiary in the manner pointed out by the policy and by-laws of the association is subject to three exceptions:  (1) If the society has waived a strict compliance with its own rules, and, in pursuance of a request of the insured to change his beneficiary, has issued a new certificate, the original beneficiary will not be heard to complain that the course indicated by the regulations was not pursued.  (2) If it be beyond the power of the insured to comply literally with the regulations, a court of equity will treat the change as having been legally made.  (3) If the insured has pursued the course pointed out by the laws of the association, and has done all in his power to change the beneficiary, but, before the new certificate is actually issued, he dies, a court of equity will treat such certificate as having been issued.

3. SAME.
   Plaintiff had issued a certificate upon the life of K., in which his aunt was named as beneficiary.  Five days before his death, he made a written request for a change in his certificate in favor of his father, in the form prescribed by the by-laws, stating that the original certificate was in the hands of his aunt, and that he could not make an actual surrender of such certificate.  This request for a change was delivered to the company in the usual manner, but, before the certificate was made out, the insured died.  Plaintiff filed a bill of interpleader, and paid the money into court.  Prior to the execution and delivery of this request, the insured had handed to his aunt, the beneficiary, another similar request for a change of designation in favor of his father to the extent of two-thirds of the certificate.  She had agreed to see that this change was made, but subsequently refused to do so.  *Held*, that she was estopped to claim that the change of beneficiary was invalid by reason of the non-surrender of the original certificate, and the failure to issue a new one, and that the father was entitled to two-thirds of the amount.

*(Syllabus by the Court.)*

In Equity.

This was a bill of interpleader to settle the title to a certain benefit certificate issued by the plaintiff to Leo F. Kratzsch, a member of Carpen-

v.41F.no.1—1

ter Conclave, No. 17, Royal Adelphia, located at Milwaukee, and payable on its face to defendant Cappella, the aunt of the insured. Her title to this certificate, however, was disputed by defendant Julius Kratzsch, father of the deceased member, upon the following state of facts:

The certificate in question, which was for the sum of $3,000, was originally issued October 17, 1885, to Leo F. Kratzsch, and made payable to his sister Emma, in accordance with the laws of the order, one of which provided as follows:

"A member may at any time, when in good standing, surrender his benefit certificate, and a new one shall be issued, payable to such beneficiary or beneficiaries as such member may direct, in compliance with the laws and usages of the order, and the payment of a fee of fifty cents. Said surrender and direction must be made in writing, signed by the member, and forwarded under the seal of the subordinate conclave, with the benefit certificate, to the supreme secretary," who resided in Detroit.

In March, 1888, the insured member, being then afflicted with a pulmonary disease, went to Florida for the benefit of his health. He returned in June by the way of St. Louis, and remained there for about three weeks, at the house of one Pesch, for whom his aunt, Miss Cappella, was housekeeper. His aunt took care of him during his stay, and loaned him $400; he saying to her that he would "will her the policy," and that "he wanted her to have it." Soon after his arrival home, and on June 23d, he surrendered his certificate, and procured another to be issued in favor of the defendant Cappella. In the month of August, the insured, being then at the residence of his father, the defendant Julius Kratzsch, about 35 miles from Milwaukee, and in the last stages of consumption, sent for the defendant Cappella, who came from St. Louis, where she resided, to Kratzsch's house. There was some dispute as to what took place there, but it seems to have been agreed that the certificate then in force should be surrendered, and a new one issued, wherein Miss Cappella should be made a beneficiary to the extent of $1,000, and the defendant Julius Kratzsch to the extent of $2,000. For the purpose of carrying out such arrangement, Leo made a request in writing, directed to the collector of Carpenter Conclave, No. 17, requesting him to cause his benefit certificate to be changed in accordance with such agreement; which request was delivered to defendant Cappella upon her promise to hand it, together with the fee of 50 cents, to the collector of such conclave, to be forwarded to the supreme secretary at Detroit. Miss Cappella also agreed to call upon one Mueller, at Milwaukee, to whom Kratzsch had given the certificate then in force, and procure such certificate from said Mueller, and deliver the same to the collector, to be surrendered by him to the supreme secretary. Up to this time Miss Cappella had never been in actual possession of the certificate then in force. After leaving Kratzsch's house, Miss Cappella went to Milwaukee, obtained the certificate then in force from Mueller, but did not deliver the request for the change of the certificate to the collector of Carpenter Conclave, but retained possession of the one received of Mueller. Upon returning to St. Louis, and on the 26th of August, she addressed

a letter to the insured, Leo, in which, speaking of the certificate, she said:

"I went to Mr. Eckstein, and he advised me not to have it changed. If anything would happen to you, dear Leo, while it is getting changed, they would not pay the money. And he said you could not write your name so plain any more as you used, and then they could make trouble through that. It takes four to five weeks to change that policy. I think it is best to leave it the way it is, and I won't cheat your father out of that money."

This letter, though affectionate, was not entirely satisfactory, and, on the 14th of September, Leo, being then very near his end, signed and duly executed and acknowledged an instrument in writing, directed to the supreme secretary of the plaintiff, requesting plaintiff to change his certificate in accordance with his original agreement with Miss Cappella, and stating that he could not make an actual surrender of the certificate then in force, because the same was in possession of the defendant Cappella. This instrument was duly attested by the secretary of Carpenter Conclave, No. 17, sealed with the seal of the conclave, and on the 18th of September delivered to and received by the supreme secretary of the plaintiff, together with the fee of 50 cents required by the rules of the order. On the 19th of September the insured died at the residence of his father. Due proof having been made of his death, the plaintiff audited the claim upon which it became liable, by reason of his death, at the sum of $2,910, being the amount of the certificate, less the sum of $90 paid prior to his death. Suits having been begun by Miss Cappella in this court, and by the defendant Julius Kratzsch in the state court at Milwaukee, plaintiff filed this bill of interpleader to compel defendants to litigate their respective claims upon the fund, and paid into court the amount of the certificate as audited.

*Julian G. Dickinson,* for defendant Cappella.

*J. H. Brewster,* for defendant Kratzsch.

BROWN, J. This is one of a class of cases which have become quite common within the past 25 years, arising out of an inexpensive method of insurance, by which persons in moderate circumstances may, by the payment of a small monthly assessment, secure a provision for themselves or their families in case of sickness, accident, or death. Much of the law applicable to ordinary cases of life insurance is equally applicable here. In a few particulars, however, it seems to be somewhat less favorable to the person for whose benefit the policy is taken out. For instance, in case of an ordinary policy, the right of the person for whose benefit a policy is issued cannot be defeated by the separate or joint acts of the assured and the company, without the consent of the beneficiary, (Bliss, Ins. § 318;) while it is entirely well settled that in cases of this description the beneficiary has no vested interest in the benefit certificate until the death of the insured member. Up to this time he may change his designation of beneficiary at will, against the consent of such beneficiary, even though the latter may have advanced the money to pay the assessments upon the certificate. Bac. Ben. Soc. § 306; *Lamont* v. *Association,* 30 Fed. Rep. 817; *Wendt* v. *Le-*

*gion of Honor*, 72 Iowa, 682, 34 N. W. Rep. 470; *Association* v. *Montgomery*, 38 N. W. Rep. 588; *Fisk* v. *Union*, 11 Atl. Rep. 84; *Hellenberg* v. *District No. 1*, 94 N. Y. 580; *Society* v. *Burkhart*, 110 Ind. 192, 10 N. E. Rep. 79, and 11 N. E. Rep. 449; *Holland* v. *Taylor*, 111 Ind. 121, 12 N. E. Rep. 116; *Lamont* v. *Grand Lodge*, 31 Fed. Rep. 177; *Schillinger* v. *Boes*, 3 S. W. Rep. 427; *Knights of Honor* v. *Watson*, 15 Atl. Rep. 125; *Beatty's Appeal*, Id. 861; *Byrne* v. *Casey*, 70 Tex. 247, 8 S. W. Rep. 38.

In making such change of beneficiary, however, the insured is bound to do it in the manner pointed out by the policy and the by-laws of the association, and any material deviation from this course will invalidate the transfer. Thus, if the certificate provides that no assignment shall be valid unless approved by the secretary, an assignment without such approval will be invalid. *Harman* v. *Lewis*, 24 Fed. Rep. 97, 530. So, if it be provided that such change must be made on a prescribed form or blank, the signature to which shall be attested before a notary, and the change entered upon the books, an assignment to a creditor as collateral security, not made upon the prescribed blank, and of which the association had no notice until after the death of the member, was held to be fatally defective. *Association* v. *Brown*, 33 Fed. Rep. 11. So, where the certificate required every surrender to be in writing, attested by the reporter under the lodge seal, it was held that a conditional surrender of the same by the holder, not to take effect until after his death, and not made in the presence of or attested by such lodge reporter, was invalid. *Supreme Lodge* v. *Nairn*, 60 Mich. 44, 26 N. W. Rep. 826. See, also, *Wendt* v. *Legion of Honor*, 72 Iowa, 682, 34 N. W. Rep. 470; *Elliott* v. *Whedbee*, 94 N. C. 115; *Mellows* v. *Mellows*, 61 N. H. 137; *Highland* v. *Highland*, 109 Ill. 366. So, if the by-laws fix definitely the manner of changing the beneficiary by his action during his life, an attempt to divert the benefit by will has usually been held to be abortive. *Holland* v. *Taylor*, 111 Ind. 121, 12 N. E. Rep. 116; *Stephenson* v. *Stephenson*, 64 Iowa, 534, 21 N. W. Rep. 19; *Insurance Co.* v. *Miller*, 13 Bush, 489; *Vollman's Appeal*, 92 Pa. St. 50; *Renk* v. *Herrman Lodge*, 2 Dem. Sur. 409; *Daniels* v. *Pratt*, 143 Mass. 216, 10 N. E. Rep. 166.

There are, however, three exceptions to this general rule, requiring an exact conformity with the regulations of the association:

(1) If the society has waived a strict compliance with its own rules, and, in pursuance of a request of the insured to change his beneficiary, has issued a new certificate to him, the original beneficiary will not be heard to complain that the course indicated by the regulations was not pursued. This naturally follows from the fact that, having no vested interest in the certificate during the life-time of the assured, he has no right to require that the rules of the association, which are framed alone for its own protection and guidance, are not complied with. *Martin* v. *Stubbings*, 126 Ill. 387, 18 N. E. Rep. 657; *Splawn* v. *Chew*, 60 Tex. 532; *Manning* v. *Ancient Order*, 5 S. W. Rep. 385; *Society* v. *Lupold*, 101 Pa. St. 111; *Brown* v. *Mansus*, 5 Atl. Rep. 768; *Knights of Honor* v. *Watson*, 15 Atl. Rep. 125; *Byrne* v. *Casey*, 70 Tex. 247, 8 S. W. Rep. 38;

*Titsworth* v. *Titsworth*, 20 Pac. Rep. 213.    The case of *Wendt* v. *Legion of Honor*, 72 Iowa, 682, 34 N. W. Rep. 470, appears upon its face to lay down a different rule, but upon examination it will be seen that the change was attempted to be made by a paper which the insured called his last will, but which was no will in law; and the court held that, the interest of the beneficiary having become vested by the death of the insured, they had acquired rights which could not be cut off, except in the manner prescribed in the contract.    This case, evidently, has no application to a change made prior to the death of the insured.

(2) If it be beyond the power of the insured to comply literally with the regulations, a court of equity will treat the change as having been legally made.    Thus, in the case of *Grand Lodge* v. *Child*, 38 N. W. Rep. 1, the insured made his betrothed the beneficiary, and subsequently lost his certificate.    His beneficiary having married another, he made a statement of the loss, and applied for a reissue of the certificate, making his son the beneficiary.    His application was refused.    The rules of the organization required the change to be indorsed on the original certificate, but, by the advice of the officers, he attempted to make the change of beneficiary by giving a power of attorney to another to collect the amount which should accrue under the certificate.    It was held that such acts constituted an equitable change of beneficiary, and that the son was entitled to the fund.    The court held that the insured had done all that he could, and all that he was required in equity to do, to change the donee of the certificate.    "The rules of the order allowed him to do this, and it was not in the discretion of the order to prevent it.  *  *  *  The law never requires impossibilities; and the rules of the order, which required the certificate to be surrendered when a change of the beneficiary was made, that it might be indorsed upon the certificate, could only be construed as requiring that to be done when the certificate was in existence.    The existence of the right to share in the benefits of the order, and to direct who should receive the fund in case of the death of a member, was a right vested in the member as soon as he became entitled thereto, and the certificate was only evidence of the existence of that right, and, when that evidence was lost, the right remained, and its existence could be established by any other competent evidence; and the same is true of the existence of the change directed by the member of the beneficiary."

(3) If the insured has pursued the course pointed out by the laws of the association, and has done all in his power to change the beneficiary, but, before the new certificate is actually issued, he dies, a court of equity will decree that to be done which ought to be done, and act as though the certificate had been issued.    The case of *Association* v. *Kirgin*, 28 Mo. App. 80, is an illustration of this exception.    In this case, the insured, having met with a fatal accident, called a friend, and requested him to take his certificate to the association and surrender it, pay the fee of 50 cents, and request them to issue a new one, payable to his wife. This was done, and a minute of the transaction was made on the records of the association for that day.    On the following day the insured died.

It was held that in doing this he had done all that the laws of the order required to be done on his part in order to have a new certificate; that his right to make the change was absolute, and that the association had no right to refuse his request; and, further, that the fact that the certificate was issued after his death was immaterial, since the certificate was not the right itself, but merely the evidence of the right. See, to the same effect, *Mayer* v. *Association*, 2 N. Y. Supp. 79; *Supreme Lodge* v. *Nairn*, 60 Mich. 44, 26 N. W. Rep. 826; *Kepler* v. *Supreme Lodge*, 45 Hun, 274. The case of *Ireland* v. *Ireland*, 42 Hun, 212, is distinguishable from these in the fact that the insured made no written request for a change, as required by the rules, but merely delivered the certificate to a friend, telling him he wanted it changed. This was manifestly insufficient.

We think the case under consideration falls within these exceptions. Five days before the death of the insured, he signed and acknowledged before a notary a written application for a change in his certificate in the form prescribed by the by-laws, stating that the original certificate to Anna Cappella was in her possession, and beyond his control. This application was delivered to the secretary of the Carpenter Conclave at Milwaukee, who affixed the seal of the conclave, and forwarded it to the supreme secretary. It is true, he did not surrender the original certificate, as required by the regulations; but he had done all in this connection which was within his power, or which he could reasonably be required to do. He had requested defendant Cappella to obtain it of Mueller, and deliver it to the proper officer at Milwaukee, and had taken her word that she would do so. She probably went to Milwaukee with that intention, but upon calling upon Mr. Eckstein, the collector of the Carpenter Conclave, she says he advised her that it would take four to five weeks to make a change, and she had better not do it. This was before she had obtained the certificate of Mueller. It is but just to Mr. Eckstein to say that he gives an entirely different version of the transaction, and swears that she told him that she had been prevailed upon to make a change in the benefit certificate which was entirely satisfactory to her, saying that $1,000 was all she cared for, seeing that that was the amount the insured was owing her. Says he:

"I asked her whether she had something written to that effect; that it should be made in that manner, or indorsed on the certificate. She said that nothing had been indorsed on the certificate, but she was perfectly willing to leave it as it was, and to give the father bonds or some security for the $2,000."

Upon arriving at St. Louis, she writes Leo that she thinks it best to leave it the way it is, and that she will never cheat his father out of the money. Her purpose was illy concealed by this letter. Upon the stand she explains this by saying that Leo was being annoyed by his father about the certificate, and she wished to put his mind at rest, that he might die in peace, and that his father might understand that he was to have the benefit of two-thirds of the certificate. In short, she leaves us to infer that she never really intended to make the change. Our impression, however, is that she did intend, at first, to comply with Leo's

request, but was overpersuaded by some one to change her mind. With regard to the writing which she received from Leo, she first says that it was destroyed, and then that it was lost; but, whichever it was, it is clear that the certificate was as much lost to the insured as if it had been destroyed. While the supreme secretary may have been justified in refusing to issue a new certificate without a surrender of the old one, according to the requirements of the order, it certainly does not lie in the mouth of Miss Cappella to set up this failure in a court of equity, when she herself is a cause of it, and the company has admitted its liability by the payment of the money into court. No maxim of the law is founded upon more substantial justice than that which declares that no one shall take advantage of his own wrong. Under the by-laws of the company, the insured had a legal right to change his beneficiary whenever he pleased; and the consent of the company does not seem to be required, much less that of the beneficiary. Were the non-surrender of the certificate set up by the company in a common-law action brought by Kratzsch, it is possible the court might be compelled to hold that he had failed to establish his title; but when the company waives this defense, or at least disclaims any interest in the result of the controversy, the objection comes with ill grace from one who is solely responsible for such non-surrender. A court of equity is seldom embarrassed by technicalities, and will make such decree as the justice of the case manifestly requires. The cases above cited, which establish the proposition that the failure to take the proper steps to change the designation can only be taken advantage of by the company itself, are equally pertinent to show that it cannot be made available by one standing in the relation of Miss Cappella to this fund. The case of *Hainer* v. *Legion of Honor*, 43 N. W. Rep. 185, is instructive in this connection. In this case the deceased had made his certificate payable to his mother. Upon the back was a printed blank designed for changing the designation. After the issuance of the certificate, the insured married, and subsequently died, leaving a will, in which he bequeathed one-half of the amount due upon the certificate to his daughter. The association appeared, and paid into court the amount of the certificate. It was held that the mother, having known of the provisions of the will, and having made no objections thereto, but, on the contrary, having expressed her acquiescence in the same, and taken possession of certain real property devised to her, and otherwise having availed herself of the benefits conferred upon her by the will, was estopped to claim the full amount of the certificate. The court held that, although a change of beneficiaries by will was not such a compliance with the regulations of the company as would entitle the person named in the will to recover, yet the company having disclaimed any interest in the controversy by the payment of the money into court, the original beneficiary was estopped by her conduct in taking under the will to repudiate the provision by which one-half of the certificate was bequeathed to the daughter. The case of *Marsh* v. *Supreme Council*, 21 N. E. Rep. 1070, is still more direct authority to the point that the original beneficiary cannot avail herself of her own mis-

conduct to allege that the insured did not comply with the requirements of the association.

There must be a decree awarding one-third of the fund to defendant Cappella, and the residue to the defendant Julius Kratzsch, with costs against Miss Cappella.