## AMANDA HOLMES v. JOSEPH GOOCH, THE METROPOLITAN LIFE INSURANCE COMPANY et al.

Middle Section.  January 15, 1926.

Petition for Certiorari denied by Supreme Court, June 19, 1926.

1. **Insurance. In order to effect a change of beneficiary the mode prescribed by the policy must be followed.**
   In order to change the beneficiary of a life insurance policy there must be an effort to actually change the beneficiary in accordance with the provisions of the policy or contract and the beneficiary's interest is subject to be defeated only by the exercise of the power of substitution, substantially in the manner set out in the policy or in the laws of the order.

2. **Insurance. Evidence. Evidence held not to show a change of beneficiary.**
   Where a party wanted to change the beneficiary in his life insurance policy and so advised the agent of the company and the agent advised him of the requirements of the policy and that he must file a written order and the policy was delivered to the agent but no order was ever signed and no letter ever written to the company although several letters in regard to it were written to members of his family, held not to be a sufficient compliance with the requirements of the policy to change the beneficiary.

3. **Insurance. Insurance agent is agent of the company.**
   By the Act of 1907, chapter 492, insurance agents are declared to be the agent of the company and are not agents of the assured.

4. **Trial. A party cannot plead a compliance with a contract and then rely on a waiver at the hearing.**
   Where party pleaded a compliance with the requirements of an insurance contract for the change of beneficiary and at the trial relied upon the waiver of the company through its agent, held that there was a variance between pleading and proof and complainant could not recover.

Appeal from Chancery Court, Davidson County; Hon. John R. Aust, Chancellor.

Reversed and dismissed.

Guild Smith, of Nashville, for appellants, Gooch, et al.

Norman Farrell, of Nashville, for appellee, Holmes, et al.

CROWNOVER, J.   The original bill was filed in this cause by Amanda Holmes against the Metropolitan Life Insurance Company,

Joseph Gooch, a minor, and Melinda Dillard, his guardian, to recover on $1,000 insurance policy on the life of Frank Holmes.

The bill alleged that a policy for $1,000 was issued on the life of Frank Holmes and was made payable to his step-son, Joseph Gooch; that the policy contained a clause reserving the right of the assured to change the beneficiary at any time he desired; that sometime after the issuance of said policy, the assured desired to change the beneficiary and to substitute his mother, the complainant, Amanda Holmes, and in pursuance of this desire, he filled out and signed a blank notifying the Company of the desired change and delivered the same together with the policy to the defendant Company's agent to be sent to the Home Office of the Company for the required endorsement of change on said policy; that the Company or its agent had negligently kept said policy, and that, after her son's death, the same was found in or behind the agent's desk in the local office of the Company at Nashville, Tennessee; and that whether the Company had actually endorsed on the policy the change of beneficiary was immaterial, as the assured had done all that was required of him and all that was necessary to effect the change, and therefore, she was entitled to the proceeds of said policy. She further alleged that the said Insurance Company was about to pay the proceeds of said policy to the original beneficiary, Joseph Gooch, and she asked for an injunction restraining the payment to Joseph Gooch, and for a decree for the proceeds of said policy.

The defendant, Joseph Gooch, answered and denied that a change of beneficiary had been effected as required by the policy, as no written notice of the change had been given the Company at its Home Office and the change endorsed on the policy as required. He insisted that his interest as beneficiary in said policy had become a vested right on the death of the assured, and that the Insurance Company could not waive that right, and that whatever had been done in attempting to change the beneficiary had not been done in accordance with the restrictions of the policy. He further insisted that the delivery of the policy to the agent, DeHart, was ineffectual to change the beneficiary, as DeHart became the agent of the assured, and if he was guilty of any negligence that negligence must be imputed to the assured as the agent acted in the matter for the assured and not for the Company.

.The defendant, Insurance Company, filed an answer and cross-bill in the nature of an interpleader, in which it admitted that the policy on the life of Frank Holmes was in force on the date of his death, and that it had been informed that Frank Holmes had expressed to a former agent of the Company a desire to change the beneficiary, and that said agent, at his direction, obtained the policy but informed him that he must sign a formal application to change

the beneficiary; that the formal application was not filled out or signed by said assured, although he had expressed a desire to change the beneficiary by substituting his mother, Amanda Holmes; and that the policy was in the office of the Company at Nashville awaiting the necessary completion of the change of beneficiary at the time of the death of the assured. The defendant admitted its liability and desire to pay the proceeds of the policy to the party rightly entitled thereto, but alleged that a controversy had arisen between the parties as to who was the real beneficiary, therefore, the said Insurance Company asked to be permitted to pay the proceeds of the policy into the court and to be discharged.

Later, by agreement, an order was entered permitting the Insurance Company to pay the money into court in this cause and the bill was dismissed as to said Company. This order was entered upon agreement that none of the rights of the parties were to be prejudiced thereby.

Several depositions were taken and read at the hearing to the Chancellor, who decreed that the change of beneficiary had been effected in contemplation of equity, and awarded complainant a decree for the proceeds of the policy.

The defendant, Gooch, excepted, appealed to this court, and has assigned six errors, but all of them go to the one proposition that the court erred in decreeing the proceeds of said policy to complainant, Amanda Holmes, because the assured had not changed the beneficiary in substantial accordance with the provisions of the policy; it being insisted that the assured had not done all that was reasonably in his power to formally effect a change of beneficiary necessary to invoke the doctrine that equity will treat that as having been done which should have been done.

The assured, Frank Holmes, procured the defendant, Insurance Company, to issue a policy for $1,000 on his life payable to his stepson, Joseph Gooch, a minor, which policy was in force at the date of his death on October 15, 1922.

The said policy had a printed clause about the change of beneficiary as follows:

"This Policy is written with the right of the Insured to change the Beneficiary. When such right has been reserved, and if there be no written assignment of this Policy on file with the Company, the Insured may (while the Policy is in force) designate a new beneficiary, with or without reserving right of change thereafter, by filing written notice thereof at the Home Office of the Company accompanied by the Policy for suitable endorsement. Such change shall take effect upon the endorsement of the same on the Policy by the Company and

not before. If any beneficiary shall die before Insured the interest of such beneficiary shall vest in the Insured.''

The policy was issued on November 12, 1921, and had been in the possession of Melinda Dillard, guardian of the minor Joseph Gooch, but in the summer of 1922, the assured desired to make a change of the beneficiary and to substitute his mother, Amanda Holmes, and told his mother, and his sisters and others of his intention. He saw the Insurance Company's agent, a Mr. DeHart, and told him of the desired change. The agent informed him fully in detail of the requirements of the policy as to the change of beneficiary, that it was necessary to sign a written request and to have it sent to the Home Office accompanied by the policy for endorsement of the change.

The assured had some trouble in regaining possession of the policy, and in the meantime, he decided to remove to the city of St. Louis, Missouri. After regaining possession of the policy he left it with Belle Smith to be delivered to said agent, and then left for St. Louis in June, 1922, where he remained until his death.

Belle Smith delivered the policy to said agent, DeHart, who placed the same in his desk where it was found after the death of the assured. No written request for change of the beneficiary was made to the Company at its Home Office in New York City or elsewhere, and no change of beneficiary was endorsed on said policy.

The agent, DeHart, testified that he fully informed the assured in detail about the requirements for the change of beneficiary; that he had made one or more engagements with the assured for the purpose of changing the beneficiary, but that the assured had not kept them; that the policy was later delivered to said agent by Belle Smith, and that he placed the same in his desk for safe-keeping until the change could be completed, and that no further effort was made by the assured to complete the change, after being told what should be done, and the policy was left in the desk when the agent removed to Roanoke, Virginia.

The agent, DeHart, was addicted to drink, and on September 1, 1922, the Company transferred him to Roanoke, Virginia, and replaced him with another agent named Blankiston.

It seems that the assured, after going to St. Louis, became anxious about the change of the beneficiary, and wrote letters to his mother and sisters insisting that they see Belle Smith and ascertain the cause of the delay in the change of the beneficiary and of the return of the policy, but he wrote no letters to the Company or its agents. Two of these letters were filed in the record as follows:

"St. Louis, Mo. August 3, 1922.

Dear Mother,

While sitting down thinking of you I thought I would write you a few lines to let you know I am well and hope when these few lines reach you all they will find you the same say bee what about that police have it come if it has have them transferred to me at once for I will have to pay on them soon tell sonnie and Babe I said hody and to be good boys is Babe still preaching tell papa hody and tell him I will send him sothing soon all so sister dam old sue for she is so dam mean tell her I said send me a dollar for my Birthday present and I will send her sothing be sure to have them police transferred at once tell sister to tend to it so I close fum your brother F. H.
2903 Franklin St. St. Louis

St. Louis Mo. August 4, 1922
Miss Louise Hogan, (Envelope)
1503 10th Ave. S. Nashville, Tenn."

"Sept. 7th, 1922.

Dear Mother.

While sitting down thinking of you I thought I would write you a few lines to let you know I am well and hope when these few lines reach you they will find you they same say bee goe down to that womans house and ask her did she give that police to Mr. Deaharty if she did write and let me know if not have son police the one that made to me transferred to me at once mettis is coming home this week so give my love to all tell sister I would have done send her some money but some one stold my cloth, from F. H. 2903 Franklin St. St. Louis Mo. Answer at once and have the police transfer at once.

Yours truly,

St. Louis Mo. Sept. 7, 1922.
Mrs. Amanda Holmes,
1503 10th Ave. So.
Nashville, Tenn. (Envelope)"

He told his mother that he had left the policy with DeHart for the change, and she interviewed DeHart and testified: "I asked Mr. DeHart did he have it fixed and he said he fixed it."

Frank Holmes had told Mildred White that he had changed the beneficiary and substituted his mother, and after he left for St. Louis he wrote her to see DeHart about it and to see when he was going to send the papers. She testified "yes, I used to ask him every time I saw him about them, and he said he had sent them off and as soon as they get them fixed they would send them to him."

Belle Smith testified that the assured had told her of the change of beneficiary, and testified: "Yes sir, he (the assured) met Mr. DeHart up there at the store and told me that he was going to have his insurance changed and then Mr. DeHart met him at my house and he told Mr. DeHart when are you going to fix up my insurance and he said when you bring it I will fix it."

The assured told his sister, Gertrude Terry, about the change of beneficiary. She testified in part as follows: "He says I acted a fool at the time I made it out and made it to my son; Jos. Gooch, and he said I am sorry I did it but I have made arrangements with Mr. DeHart to change this policy and Mr. DeHart told me it would take two weeks to get it changed, and I am going to take it now and leave it with Mrs. Belle Smith, and DeHart will get it Tuesday when he goes there to collect but I will be here two weeks because I would like to get it changed before I leave. I want it made over to mamma" etc.

She later testified: "He told me, 'I have waited two weeks for DeHart and I saw DeHart and he said he would attend to it and it would be all right and I am going on. I am leaving out sunday.' "

Another sister, Susie Holmes, testified to substantially the same, except that she adds: "and he went on and said he had fixed everything with him (DeHart) and told sister to see after it. Sent Bee down there for it." None of these conversations are denied by DeHart.

After DeHart left the city of Nashville, complainant and others interviewed Mr. Pugh and Mr. Blankiston, other agents of the Company, and told them of the desired change, and the agents began to investigate but did not find the policy. It seemed that DeHart had not informed them about the policy, and they knew nothing of the proposed change of the beneficiary. One agent made a memorandum of the inquiry, in his book but he could not tell who inquired, and the matter dragged along without anything being done further than inquiries by complainant and others, until after the death of the assured when Mr. Pugh, agent of the Company, went through DeHart's old desk and found the policy back between the desk and wall.

Now, under this state of facts, the complainant insists that the change of beneficiary was effectual, that if an actual formal change was not made, it was prevented by the Company's agent; that the assured, in his efforts to make a change in the beneficiary, had done all that was reasonably in his power to comply with the provisions of the policy and the rules of the company, but was prevented by the agent of the company, and died before the change could be formally effected; and that, under such circumstances, a court of equity will treat the substitution as complete on the principle that

in equity that will be deemed done which ought to be done, as equity does not demand impossible things.

While on the other hand, the appellant, Gooch, insists that in this case the facts show no sufficient attempt on the part of the assured to make the change, which effort must be one to comply with the provisions of the policy; that the failure was due to the neglect of the assured, and that he was not prevented from doing so by any happening over which he had no control, and that in such a case the intention should not be treated as consummated in equitable contemplation.

The Chancellor held that the change had been effected, but, after an examination of the record and the law, we are unable to agree with him. · The cases on the subject are reviewed at length in our opinion in the case of Minnie P. Cronbach v. Aetna Life Insurance Co., Davidson County Equity, rendered today, and a further review of the cases will serve no good purpose. We think this case is governed by the principles laid down in the case of Davis v. Davis, 136 Tenn., 520.

In order to effect a change of beneficiary the mode prescribed by the policy must be followed, subject to the exceptions mentioned by Judge Brown in the case of Supreme Conclave Royal Adelphia v. Cappella, 41 Fed. 1, as modified by the courts in the cases · Modern Woodmen of America v. Headle, 88 Vt., 37; L. R. A. 1915A, 589, and Davis v. Davis, 136 Tenn., 520.

In the case of Cronbach v. Insurance Co., supra, we stated that there must be an effort to actually change the beneficiary in substantial accordance with the provisions of the policy or contract, and that the beneficiary's interest is subject to be defeated only by an exercise of the power of substitution substantially in the manner set out in the policies or in the laws of the order.

In other words there must be an actual attempt to comply with the restrictions of the policy substantially in the manner set out in the policy, and his mere intention will not suffice to work a change of beneficiary. See, authorities cited in Cronbach v. Insurance Co., supra.

Of course, if the assured was prevented from making the change by the Insurance Company, its agents, the original beneficiary or other person, and he did all that was reasonably within his power to effect the change the result might be different, but in this case the proof shows that he made no effort to change the beneficiary in accordance with the restrictions of the policy by filing. written notice at the home office of the Company in New York City and by returning the policy for the proper endorsement. The uncontradicted proof is that "the change of beneficiary clause" was drawn to his attention and that he was fully informed as to the require-

ments. He made no effort to complete the change, other than to deliver the policy to the agent and to make some inquiries. It cannot be implied from his letters, above referred to, that he desired the change by a substitution of his mother, as his letters rather imply that he was expecting the change to be made to himself.

The policy was never delivered to his mother, the complainant, but a delivery without complying with the restrictions of the policy is not sufficient. See, Davis v. Davis, supra.

Subject to the exceptions above mentioned, the contractual limitations set out in the policy must be observed, and where there is no attempt to comply, the mere expression of an intention is not sufficient. The Company cannot waive the provision for a change of beneficiary after the death of the assured, as the beneficiary's interest then becomes a vested right.

It was insisted by appellant, that DeHart became the agent of the assured with respect to the change of beneficiary and that he was not the agent of the Insurance Company in that matter. We cannot agree to this proposition. By the Act of 1907, chapter 442, such agents are the agents of the Company and may verbally waive the written provisions of the policy. They are not the agents of the assured. See, Maryland Casualty Co. v. McTyier, 150 Tenn., 691.

The case of Davis v. Davis, supra, was decided long after the passage of chapter 442 of the Acts of 1907, and no question of waiver of the change of the beneficiary clause was involved in that case, but we must assume that the Supreme Court had the Act of 1907, chapter 442, in mind in laying down the principles upon which a change of beneficiary may be effected.

However, in this case the agent, DeHart, fully informed the assured of the requirements as to the change of the beneficiary and there is no proof that the agent misled him as to the requirement of written notice of a desire to change the beneficiary, or that the agent did anything to waive the requirements of the policy as to the change of the beneficiary. In fact all proof showed that the assured, his mother and sisters knew that the policy had to be sent to the Home Office. In fact it is alleged in the bill that the assured had made out and signed a written request for the change of the beneficiary and had delivered it and the policy to said agent, whereas, the proof showed that no written request was ever made; and the complainant cannot now rely on a waiver of the written request. A party cannot plead a compliance with the contract and then later rely on a waiver at the hearing. (26 C. J., p. 493, sec. 693, Note 3 (a); p. 497, sec. 702, Note 59; Caldwell v. Insurance Co., 124 Tenn., 611;). Facts not set forth in either the bill or answer and appearing only in the proof will not justify nor sustain a de-

cree. See, Bank v. Insurance Co., 85 Tenn., 76; Price v. Hamilton, 8 Hig., 474.

The proposition stated in the case of Maryland Casualty Co. v. McTyier, 150 Tenn., 691, that where a bill alleged facts showing a waiver by defendant of certain defenses, the doctrine of estoppel applies, though it was not pleaded eo nomine, does not apply in this case because the complainant alleges a compliance with the restrictions of the policy on the part of the assured by giving notice of change of beneficiary in writing, and now she cannot insist upon a waiver of the same by the Company through its agent.

It results that the assignment of errors must be sustained. The decree of the Chancellor is reversed and the bill dismissed. The defendant, Joseph Gooch, is decreed to be the lawful owner of the proceeds of said $1,000 policy, and the cause will be remanded to the chancery court of Davidson county with direction that the proceeds of the said policy be paid to the guardian of said minor, Joseph Gooch, under proper orders to safeguard said fund for said minor.

The cost of the cause, including the cost of the appeal, is adjudged against complainant, Amanda Holmes, for which execution may issue.

Faw, P. J., and DeWitt, J., concur.