MARY T. KELLY vs. MICHAEL J. SHEIL & others.

Suffolk.　April 8, 1937. — September 24, 1937.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Fraternal Benefit Society.*

Under provisions of the constitution of a fraternal benefit society conforming to G. L. (Ter. Ed.) c. 176, § 21, no valid substitution of a beneficiary outside the class eligible as original beneficiaries was made by a member who died before the governing committee of the society had had a reasonable opportunity to pass upon the change, although, had the member lived longer, it would have been approved by the committee.

BILL IN EQUITY, filed in the Superior Court on June 14, 1934, and afterwards amended.

The suit was heard by *F. T. Hammond*, J., and a final decree was entered in accordance with his order. The defendants Sheil appealed.

*H. G. Jackson & L. N. Gordon*, for the defendants Sheil, submitted a brief.

*G. T. Pyne*, for the plaintiff.

QUA, J. The Massachusetts Catholic Order of Foresters is a fraternal benefit society governed by G. L. (Ter. Ed.) c. 176. It maintains a "Mortuary Fund" for the payment of death benefits. One Mary A. Sheil, a member in good standing, died April 19, 1934. The question in the case is whether Miss Sheil had made a designation of the plaintiff as her beneficiary which is valid and enforceable in equity or whether her death benefit is payable to her next of kin under a section of the constitution of the order applicable when a deceased member leaves no legally designated beneficiary.

The constitution provides that if the named beneficiary and the wife, husband, betrothed, child, parents or dependents of a member have all died, "the member, with the consent of the High Standing Committee and under

such rules as they may prescribe, may have any other person substituted as beneficiary." This wording closely follows that used in G. L. (Ter. Ed.) c. 176, § 21, and this section of the constitution is obviously framed upon that statute. In fact no rules have been prescribed. On April 17, 1934, while Miss Sheil was at a hospital and two days before her death, she executed upon a form prepared by the order a paper addressed to the High Standing Committee wherein she revoked any former disposition of her mortuary benefit and ordered and directed that such benefit be paid to the plaintiff. At that time Miss Sheil's mother, her former beneficiary, had deceased, and there were no persons living who bore toward her any of the relationships hereinbefore mentioned. The plaintiff was a friend and a creditor of Miss Sheil, but was not a relative. Miss Sheil delivered the paper to the recording secretary of the subordinate "court" to which she belonged, by whom it was sent to the High Court Secretary-Treasurer of the Order. It was "received at the headquarters of the Order" on April 18, 1934. In the course of business the High Secretary-Treasurer would send such a paper to counsel for his opinion, and thereafter it would be sent to the High Standing Committee, and when that committee approved the change a record would be made. In this instance the "papers" were not sent to counsel until after Miss Sheil's death, and "the substitution of beneficiary never came before the High Standing Committee."

The trial judge further found that Miss Sheil did all that the constitution and rules of the order required her to do to substitute the plaintiff as beneficiary; that "the Committee would have consented to the substitution"; but that death supervened before consent could be obtained. He ruled that the plaintiff should be deemed to have been substituted as beneficiary and entered a decree in her favor.

The ruling of the trial judge is based upon the principle that if an insured has power to change his beneficiary and if he has done in the prescribed manner all that is required of him to effect the change, but if at the time of his death

the officers of the society have failed to complete some purely ministerial or formal duty remaining to be done on their part, equity will regard the exercise of the power as binding and effective and will lend its aid to accomplish the intended result. This principle has received general recognition, although courts have differed whether particular requirements should be deemed to be ministerial and formal or whether they should be deemed to be substantial conditions of the contract which must be performed before the transfer can be recognized. See for example *Resnek* v. *Mutual Life Ins. Co.* 286 Mass. 305, 309; *Supreme Conclave, Royal Adelphia* v. *Cappella,* 41 Fed. 1; *Modern Woodmen of America* v. *Woodden,* 49 Fed. (2d) 941; *Supreme Lodge Knights of Honor* v. *Nairn,* 60 Mich. 44; *Goodrich* v. *Grand Lodge, Brotherhood of Railroad Trainmen,* 107 Neb. 250; *Prudential Ins. Co.* v. *Swanson,* 111 N. J. Eq. 477; *State Mutual Life Assurance Co.* v. *Bessett,* 41 R. I. 54. Compare *Freund* v. *Freund,* 218 Ill. 189, and see also *Marsh* v. *Supreme Council American Legion of Honor,* 149 Mass. 512, 518; *Anthony* v. *Massachusetts Benefit Association,* 158 Mass. 322; *Kochanek* v. *Prudential Ins. Co.* 262 Mass. 174, 178; *Goldman* v. *Moses,* 287 Mass. 393, 397.

An examination into the structure and history of the governing statute, G. L. (Ter. Ed.) c. 176, § 21, compels us to the conclusion that under this statute the consent of the officers of the society is not a mere formality intended only as a part of the machinery of transfer, but that where, as here, the insured seeks to introduce as beneficiary by transfer a person who is not a relative or dependent and not within the class of persons who could have been named as original beneficiaries, consent means something more than the perfunctory registration of the command of the insured, and that it is at least necessary that the proper officers have an opportunity to pass upon the proposed change before the society can be bound thereby.

Fraternal benefit societies are not life insurance companies. At first the class of original beneficiaries was confined to widows, orphans and dependents. St. 1877, c. 204.

Later it was extended from time to time to include other relatives, and still later it was again somewhat restricted. St. 1882, c. 195. St. 1888, c. 429, § 8. St. 1890, c. 341, § 1. St. 1894, c. 367, § 8. St. 1897, c. 228. St. 1911, c. 628, § 6. It has never included creditors or those having insurable interests in general. *O'Brien* v. *Massachusetts Catholic Order of Foresters*, 220 Mass. 79. Connection by blood or marriage or other intimate personal relationship (such as that of fiancé) has always been essential, and use of the mortuary fund to pay benefits to others has been regarded as a diversion of the fund from its true purposes. *Briggs* v. *Earl*, 139 Mass. 473. *Supreme Council American Legion of Honor* v. *Perry*, 140 Mass. 580, 589. *Brierly* v. *Equitable Aid Union*, 170 Mass. 218, 220. *Kerr* v. *Crane*, 212 Mass. 224, 225, and cases cited. When by St. 1894, c. 328, a member was for the first time permitted to transfer the benefits to persons outside the restricted class, it was carefully stipulated that he could do so only after the decease of certain of his nearest relatives and with the consent of the officers. *Lamothe* v. *Société St. Jean Baptiste*, 244 Mass. 189. Similarly when St. 1901, c. 275, permitted a member under certain circumstances to name a charitable institution as beneficiary, consent of the society was required. See also St. 1901, c. 487. These provisions are all now incorporated in said § 21. But that same section clearly recognizes the right of the insured member to change his beneficiary at any time in accordance with the by-laws within the class who are eligible as original beneficiaries, and for such changes the statute does not require any consent. See *Kerr* v. *Crane*, 212 Mass. 224, 227. This necessity for consent only when the insured desires to name a beneficiary outside the class for whose benefit the mortuary fund is primarily designed seems to suggest that some measure of active participation by the society in the transfer is intended.

Our opinion is strengthened by reference to St. 1934, c. 170, enacted a few days after Miss Sheil's death, whereby the officers whose consent is required are designated as those "having the powers of directors." It would be unusual to insist that a mere formality must be brought before a board

of directors.   Moreover, although it cannot be said that this question has been decided hitherto, there are several expressions in our decisions which perhaps tend somewhat toward the result now reached.   *Daniels* v. *Pratt,* 143 Mass. 216, 221.   *McCarthy* v. *Supreme Lodge New England Order of Protection,* 153 Mass. 314, 320.   *Abbott* v. *Supreme Colony United Order of Pilgrim Fathers,* 190 Mass. 67, 69.   *French* v. *Provident Savings Life Assurance Society,* 205 Mass. 424, 428.   *Kochanek* v. *Prudential Ins. Co.* 262 Mass. 174, 177. See *Supreme Council American Legion of Honor* v. *Smith,* 18 Stew. (N. J.) 466.

It is unnecessary to go further in the case before us, as it does not appear that the High Standing Committee ever had any reasonable opportunity to pass upon the change before Miss Sheil's death.   Upon her death the rights of the parties became fixed and vested.   *Resnek* v. *Mutual Life Ins. Co.* 286 Mass. 305, 310.   We need not consider the possible cases of unreasonable delay in consenting, or of capricious refusal to consent, or cases where a claimant has fraudulently prevented consent, as in *Marsh* v. *Supreme Council American Legion of Honor,* 149 Mass. 512.

The decree must be reversed, and a decree must be entered in favor of Miss Sheil's next of kin.

*Ordered accordingly.*