THE SUPREME LODGE, KNIGHTS OF HONOR v. GEORGE NAIRN AND FRANCES F. RICHARDSON.

*Benefit associations—Limited by law of incorporation, as to who may be beneficiaries—Certificate—How surrendered for cancellation and re-issue—"Family relations" defined.*

1. A benefit association, incorporated under the laws of a state, cannot abrogate or change the restrictions imposed by such laws as to who may be beneficiaries under certificates issued by such association, nor subject itself to any outside control which will override the laws of its organization as a corporate body.

2. Where a certificate, issued by such association, required every surrender thereof to be made by the member, in writing, and to be attested by the reporter, under the lodge seal, he being the officer into whose hands it must be placed for transmission to the home office for re-issue,

   *Held,* that such certificate, so far as it goes, is the measure of the rights of all parties and that a conditional surrender of same by the holder, not to take effect until after his death, and not made in the presence of, and attested by such lodge reporter, is invalid.

3. Where the statute, under which a benefit association is organized, prohibits the payment of benefits to any one not a member of the member's family, or dependent on him,

   *Held,* that an army comrade and intimate friend of such member, who had lived at his house for several years, and had become physically disabled and dependent on others for support, did not fall fairly within the designation of "family relations," hence was within the prohibition of the statute.

Appeal from St. Clair. (Stevens, J.) Argued February 3, 1886. Decided February 10, 1886.

The defendant, Richardson, was the beneficiary named in the certificate issued by complainant to one Harry Traver, deceased, who in his lifetime made an attempted transfer of the same, as stated in the opinion, to her co-defendant, Nairn, the validity of which the beneficiary, Richardson, denies.

Complainant filed a bill of interpleader to settle these conflicting claims. The court below decreed that the defendant, Nairn, was entitled to the fund, less fifty dollars awarded to complainant for its expenses, and required him to execute a bond, conditioned for the faithful pro rata application by him of said money, in the manner directed by Traver, [see opinion], after deducting his necessary costs and expenses. From this decree the complainant and the defendant Richardson, took separate appeals. The remaining facts are stated in the opinion.

*Frederick T. Sibley* and *James O. Pierce*, for complainant:

The laws, rules and regulations of the order were, by the agreement between Traver and his fellow members, made a fundamental part of the contract. Such by-laws and rules are a law unto the members of the order: *Red Men v. Schmidt*, 57 Md. 98; *Knights Golden Rule v. Ainsworth*, 71 Ala. 436; 17 C. L. J. 413; *Natl. Mutual Aid Asso. v. Lupold*, 101 Penn. St. 111; 12 Ins. L. Jour. 105; 15 Chi. Leg. News, 278; *Toram v. Howard Benev. Asso.* 4 Penn. St. 519; *St. Patrick's Beneficial Soc. v. McVey*, 92 Penn. St. 510; *Ballou v. Gile*, 50 Wis. 614; *Highland v. Highland*, 13 Bradw. (Ill.) 510; *McMurry v. Sup. Lodge Knights of Honor*, 18 Cent. L. J. 372; 20 Fed. Rep. 107; *Karcher v. Sup. Lodge Knights of Honor*, 19 C. L. J. 152; 137 Mass. 368; *Sup. Lodge P. K. v. Grace et al.* 60 Tex. 569; *Harrington v. The Workingmen's Benev. Asso.* 70 Ga. 340; *Bown v. Mut. Catholic Ben. Asso.* 33 Hun, 263; and determine their rights and may be enforced by the parties or beneficiaries, according to their respective rights as therein provided: *Arthur v. Odd Fellows Ben. Asso.* 29 Ohio St. 560; May on Ins. sec. 552; Bliss on Life Ins. sec. 463.

A change in the beneficiary can only be made in the prescribed form and where the privilege is granted, submodo, it must be so exercised: *Vollman's Appeal*, 92 Penn. St. 50 (1879); *National Mutual Aid Asso. v. Lupold*, 101 Penn.

St. 111 (1882); *Hellenberg v. 1. O. B. B.*, 94 N. Y. 580
(1884); *Greeno v. Greeno*, 23 Hun, 478 (1881); *Splawn v.
Chew*, 60 Tex. 532 (1883); *Harman v. Lewis*, 24 Fed. Rep.
97–530. The right of a member in respect to the benefit
fund is merely a power of appointment of the beneficiary :
*Order of Red Men v. Clendinen*, 44 Md. 429 ; *Arthur v.
Odd Fellows Benef. Asso.* 29 Ohio St. 557; *Splawn v.
Chew*, 60 Tex. 532; *Duvall v. Goodson*, 79 Ky. 224; *Greeno
v. Greeno*, 23 Hun, 478; *Hellenberg v. 1. O. B. B.* 94 N.
Y. 580 ; *Highland v. Highland*, 13 Bradw. 510 ; 16 Chi. Leg.
News, 184, 240; *Eastman v. Provident Mutual Relief
Asso.* (N. H.) 20 C. L. J. 266 ; 14 Ins. L. J. 858 ; *Rich-
mond v. Johnson*, 28 Minn. 447 ; *Expressmen's Aid Society
v. Lewis*, 9 Mo. Ap. 412 ; *Fenn v. Lewis*, 10 Mo. Ap. 478 ;
*Maloney v. O'Sullivan*, (Ill.) 16 Chi. Leg. News, 181;
*Catholic Mut. Ben. Asso. v. Priest*, 46 Mich. 429 ; and such
power must be exercised strictly in the prescribed form : 1
Sugden on Powers, §§ 247, 255–6, 274, 285. The rule applies
also to cases where an appointment is revocable and the power
of revocation must be exercised in the prescribed form : Id.
p. 366 [2 Am. Ed.] and equity will not aid in cases of defects
which are of the essence or substance of the power : 1 Story
Eq. Jur. §§ 97, 173–4–5. Where the mode prescribed by
the by-laws is, "the last will and testament," it must be by a
will specifically referring to the power and purporting to exe-
cute it : *Greeno v. Greeno*, 23 Hun, 478 ; *Red Men v. Clen-
dinen*, 44 Md. 429 ; *Arthur v. Odd Fellows' Benef. Asso.*
29 Ohio St. 557; *Duvall v. Goodson*, 79 Ky. 224 ; *High-
land v. Highland*, 109 Ill. 375. The member has no estate
in the fund, hence cannot make it the subject of an assign-
ment *in praesenti*, and such a benefit is no part of the per-
sonal estate of a member : *Catholic Mutual Ben. Associa-
tion v. Priest*, 46 Mich. 429 ; *Id. v. Firnane*, 50 Mich. 82 ;
*Felix v. A. O. U. W.* 31 Kan. 81; *McClure v. Johnson*,
56 Iowa, 620 ; *Duvall v. Goodson*, 79 Ky. 224 ; *Arthur v.
Odd Fellows' Ben. Asso.* 29 Ohio St. 561 ; *Bown v. Cath-
olic Mut. Ben. Asso.* 33 Hun, 263. Hence, an attempted
assignment of the fund, by the member, is void : *Basye v.
Adams*, 81 Ky. 368, and even where the rules of the society
allow an assignment of the certificate, its legality has been
doubted : *Harman v. Lewis*, 24 Fed. Rep. 97, 530.

Attempts to dispose of the benefit fund by will, as per-
sonal estate, are disregarded by the courts : *McClure v. John-
son*, 56 Iowa, 620 ; *Stephenson v. Stephenson*, 64 Iowa, 534 ;
*Weisert v. Muehl*, 81 Ky. 336 ; *Bown v. Catholic Mutual*

*Ben. Asso.* 33 Hun, 263. Nairn could not be made a beneficiary; he belonged to an excluded class. He was not "a member of Traver's family, or a person dependent on him." The limitations imposed by the charter and established by the by-laws will be enforced by the courts: *Kentucky Masonic Ins. Co. v. Miller's Admins.* 13 Bush, 489; *Van Bibber v. Van Bibber,* (Ky.) 14 Ins. L. J. 290; *Weisert v. Muehl,* 81 Ky. 336; *State v. Central Ohio Mutual Relief Asso.* 29 Ohio St. 399; *State v. People's Mut. Benefit Asso.* 42 Ohio St. 579; *Mutual Ben. Asso. v. Hoyt,* 46 Mich. 473; *Masonic Asso. v. McAuley,* 2 Mackey, 70; *McClure v. Johnson,* 56 Iowa, 620; *Greeno v. Greeno,* 23 Hun, 478.

*James W. Brewster,* for appellant Richardson:

There was no delivery of this certificate to Nairn nor anything equivalent to a delivery. He found it among Traver's papers after the funeral. But if there had been, this was not sufficient to make Nairn a beneficiary. Such certificate is not even a mutual life insurance policy. The K. of H. is a secret organization having among its other objects this special fund for a special purpose. The power of a member over the beneficiary fund is a limited power of appointment and not an estate in himself. Such power must be exercised according to the laws of the association, and when they permit a change of beneficiaries it must be made in the manner therein provided: *Natl. Mut. Aid Soc. v. Lupold,* 101 Penn. St. 111; *Vollman's Appeal,* 92 Penn. St. 50. (Charter, rules and certificate almost the same as those of Knights of Honor; same provision as to changing beneficiary.) *Eastman v. Prov. Mut. Ben. Relief Ass'n,* 14 Ins. L. J. 858; 20 Cent. L. J. 266; *Stephenson v. Stephenson,* 21 N. W. R. 19; *Carman v. Lewis,* 24 Fed. Rep. 97, 530. The charter, laws and benefit certificate of the association, constitute the contract between the association and a member; and the member is presumed to know the laws of the association: *Wildey v. Farmer's Mut. Fire Ins. Co.* 52 Mich. 446; *Am. Ins. Co. v. Stoy,* 41 Mich. 385, 395; *Hellenberg v. I. O. of B. B.* 94 N. Y. 580, 584; *Sup. Com'y Knights of Golden Rule v. Ainsworth,* 71 Ala. 436, 443–4; *Bauer v. Samson Lodge K. of P.* 1 N. E. Rep. 571; *Sus. Ins. Co. v. Perrine,* 7 W. & S. (Penn.) 348; *Mitchell v. Lyconning Mut. Ins. Co.* 51 Penn. St. 402, 411; *Eastman v. Provident Mut. Relief Ass'n,* (N. H.) 14 Ins. L. Jour. 858; *Mut. Fire Ins. Co. v. Miller Lodge,* 58 Md. 463, 471; *Karcher v. Sup. Lodge Knights of Honor,* 137 Mass. 368; *Dolan v. Court*

*Good Samaritan*, 128 Mass. 437; *Treadway v. Hamilton Mut. Ins. Co.* 29 Conn. 68; *Simeral v. Dubuque Mut. F. Ins. Co.* 18 Ia. 319, 322; *Coles v. Ia. St. Mut. Ins. Co.* Id. 425, 431; *Coleman v. Sup. Lodge Knights of Honor*, 14 Ins. L. Jour. 635, 639; *Robinson v. Ir. Am. Ben. Soc'y*, 14 Ins. L. Jour. 790; *Harman v. Lewis*, 24 Fed. Rep. 97, 530.

The money due from such an association, at a member's death, is not assets of the deceased member's estate: *Cath. Mut. Ben. Asso. v. Firnane*, 50 Mich. 82; *Vollman's Appeal*, 92 Penn. St. 50; *Ballou v. Gile*, 50 Wis. 614; *Fenn v. Lewis*, 10 Mo. App. 478; *Felix v. Ancient Order U. W.*, 31 Kan. 81; and a member cannot direct that his debts be paid from the beneficiary fund, nor can he dispose of it by will: *McClure v. Johnson*, 56 Ia. 620; *Bown v. Cath. Mut. Ben. Asso.* 33 Hun, 263; *Wilmaser Exrs. v. Cont. Ins. Co.* 23 N. W. R. 903. The rules of some of these associations provide that beneficiaries may be appointed by will: *Cath. Mut. Ben. Asso. v. Firnane*, 50 Mich. 82; but, even then, the will must be specific; the fund does not pass as a part of the estate by the residuary clause: *Md. Mut. Ben. Society v. Clendinen*, 44 Md. 429; *Greeno v. Greeno*, 23 Hun, 478, 482.

The payment of the assessments, if made by Nairn, did not entitle him to the fund: *Meier v. Meier*, 15 Mo. App. 68; *National Mut. Aid Soc. v. Lupold*, 101 Penn. St. 111.

*Avery Bros.*, for defendant Nairn:

It is contended that, as Nairn was not a relative of Traver, he could not be made a beneficiary of the fund, and reliance is placed upon a section of the laws of the order, claimed to confine payments to relatives or dependents. This provision does not apply, because adopted after the issue of Traver's certificate. At the time of such issue, payment was to be made to his family, "or as he may direct," and under this language Nairn could be made a beneficiary: *Highland v. Highland*, 109 Ill. 366; and Traver could not be deprived of the right of so naming him: *Becker v. Farmer's Ins. Co.* 48 Mich. 610. But Nairn and Traver were members of the same family within the meaning of that term: *Carmichael v. Northwestern Mutual Ben. Asso.* 51 Mich. 494. They lived together and treated each other as brothers, each contributing to the common fund for years, and each was a "dependent" within the meaning of the clause. Assuming that Nairn might properly be named as beneficiary, was this fund subject to control by assured, in his lifetime, and could

he change the original beneficiary at will without her consent? If so, must each change be in strict literal accord with the rules of the order, or is *substantial* compliance sufficient? The authorities are in conflict upon the first question, but the sounder doctrine is, that the beneficiary has an inchoate interest in the policy, but that his ultimate enjoyment of its proceeds depends on the will of the assured. That a person who insures his life for the benefit of another, who pays the premiums and keeps possession of the policy, may change the beneficiary at will; that the policy is a chose in action, which the assured has expressed an intention to give to the beneficiary named, which intention he may recall, at will, at any time before his death, on the happening of which the gift becomes complete, and not before: *Clark v. Durand*, 12 Wis. 223; *Kerman v. Howard*, 23 Wis. 108; *Foster v. Gile*, 7 N. W. Rep. 267 (555, bottom paging). To the same effect are *Gambs v. Covenant Mut.*, 50 Mo. 44; *Swift v. R. P., etc., Asso.*, 96 Ill. 309; *Laudrum v. Knowles*, 22 N. J. Eq. 594; *U. M. L. I. Co. v. Stevens*, 19 Fed. Rep. 671; *Garner v. Germania L. I. Co.*, 32 Alb. L. J. 91; *Splawn v. Clew*, (Tex. Sup. Ct.) 18 Am. Law Rev. 737–8; *Valley Mut. Ins. Co. v. Burke*, (Virginia) S. C. 12 Ins. L. J. 337; *Richardson v. Kentucky Granger's Ben. Soc.*, 1 Ky. L. Rep. & J. 735; *Bickerton v. Jacques*, 28 Hun 119.

Did Traver dispose of the fund? The contract relation existing between complainant and Traver, is to be gathered from the certificate and the complainant's rules, in existence when he became a member, or accepted this certificate. The naming of a beneficiary in Traver's application is, by the law of the order, "subject to such future disposal of the benefit as the member may thereafter direct, in accordance with the laws of the order."

There is no rule or law of complainant denying the right of dealing with this fund, on the part of the assured, in any way recognized as valid by the law of the land. The rules provide a method for procuring a new certificate, but the language as to the disposition of the fund is in no way restrictive. In *Cath. Mut. Ben. Asso. v. Priest*, 46 Mich. 429, the rule of the society was, that the fund was to be paid "to the person or persons as named by the deceased and entered by him on the will-book," yet this Court recognized the right of the assured to dispose of the fund by will in ordinary form, and it seems to us that that case rules this one. In determining who is entitled to receive the benefit of the provisions made by a society of this kind, the court should construe its

rules and regulations liberally, to effect the benevolent purposes of the order, and not so as to defeat such purposes, unless the meaning of such rules and regulations is so clear and certain as to admit of no other reasonable construction: *Ballou v. Gile*, 7 N. W. R. 563.

CAMPBELL, C. J.   Complainant filed a bill of interpleader to settle the contending claims of the two defendants to a sum of $2,000, under a member's benefit certificate issued to Harry Traver, now deceased, who was a member of one of the subordinate lodges of the association represented by complainant.

It appears from the record that the order of which complainant is a corporate representative, or various associations connected with it, became, at different times, incorporated in different states.   It also appears that there is a general association to which the smaller bodies are said to conform, having local lodges, incorporated and unincorporated.   Just how far the special corporations in different states govern those elsewhere not incorporated, does not fully appear, and is not material in the present case.   We have no judicial knowledge beyond the record, and need not inquire.

In the present case, Traver appears to have been a member of a lodge at Port Huron, in this State, and the complainant, which is the body issuing the benefit certificate, and bound to pay it, is a corporation organized under the laws of Missouri.   It is therefore, in all its contract relations, subject to the conditions imposed upon its corporate powers by those laws, and no rules or conditions can be lawfully imposed, contrary to those laws, upon its corporate action, by any private association.   It can make no contracts forbidden by the laws of Missouri to such corporations; and, while the action of the unincorporated supreme lodge may be of more or less service in construing ambiguous arrangements not forbidden, it cannot in any way supersede the statutes.

The benefit certificate, which is dated July 16, 1881, after reciting membership of Traver, and some other similar matters, and some conditions, concludes as follows:

" The said supreme lodge hereby agrees to pay out of the widows' and orphans' benefit fund, to his sister, Mrs. F. F. Richardson, the sum of two thousand dollars, in accordance with and under the laws governing this order, upon satisfactory evidence of the death of said member, and the surrender of this certificate: provided, that this certificate shall not have been surrendered by said member, or canceled at his request, and another certificate have been issued in accordance with the laws of this order."

On the back of this certificate was a printed form:

" I hereby surrender to the Supreme Lodge, Knights of Honor, the within benefit certificate, and direct that a new one be issued to me, payable to ———. [Signed] ———. Attest: ———. [Lodge Seal.]  ——— Reporter."

Upon the certificate in controversy this blank was dated March 25, 1884, signed by Harry Traver, made payable to " George K. Nairn, in trust," but not signed or attested by the lodge " reporter," or by any one.

Defendant Nairn claims that, by virtue of this indorsement, the fund belongs to him. Defendant Mrs. Richardson claims that nothing has been legally done to divest her of the benefits promised to her by the certificate.

Nairn claims that Traver was an army comrade and intimate friend, who had lived at his house several years, and became hopelessly ill from some injury, in the early part of 1884, which interfered with his doing any considerable share of business, and in October, 1884, he went to Ypsilanti for medical treatment, where he was under the care of an aunt and other near relatives and family connections, one of whom was a physician. He died at Ypsilanti in December, 1884.

Nairn testifies that, while going to Ypsilanti, Traver told him he had placed a transfer of the certificate, with other papers, in an envelope, which he had left in a bureau drawer in his room at Nairn's, and wished him to do according to the instructions which he would find there. It does not appear very clearly when Nairn first looked at this envelope, but it was sealed, and contained on the outside, in black

ink, "H. Traver," and in blue pencil mark, "For Geo. Nairn, in case of my death."

After Traver's death, it was opened by Nairn, in presence of some of Traver's relatives, and it then contained the certerficate indorsed, as before stated, as of March 25, 1884, and a letter of the same date, as follows:

"PORT HURON, March 25, 1884.

"*Reporter of Integrity Lodge, Knights of Honor*—SIR: I desire to have the beneficiary in my certificate of membership changed from Mrs. F. F. Richardson to George K. Nairn, in trust; and in the event of my death, two thousand dollars to be paid to him.

"HARRY TRAVER."

There was also a letter in blue pencil, dated June 24, 1884, directed to Nairn, and indorsed, "Geo. K. Nairn, in case of my death," the purport of which was a request to have his affairs straightened, pay a list of debts enclosed of about $359, and funeral expenses, and apply balance as directed in *memoranda*. The remainder of the letter explained his business matters and some other things.

There was also a life insurance policy for $500 on the life of Mrs. Richardson, which he requested to have kept for her son. Also a letter, dated October 15, 1884, (which was the date of his going to Ypsilanti), addressed jointly to his sister and aunt, requesting them, in case of his death, to confer and consult with Nairn, and rely on him implicitly, saying: "He has been to me through twenty years or more as a brother, and is as dear to me as one." There was no memorandum in regard to what were the terms of Nairn's trust in the fund, but Nairn says that on the way to Ypsilanti, Traver told him to take what was reasonably due him, and keep the rest in trust for his little girl. He also says that from the spring of 1884 he paid Traver's lodge dues and assessments at his desire, but never knew that the certificate had been assigned for his benefit till October, as before mentioned.

It is not claimed on either side that this certificate belonged to Traver as a part of his estate. It is admitted

on both sides that he had a power of appointment to change the beneficiary. It is also clear that the beneficiary named in the certificate must take the fund, unless there has been a valid appointment in favor of Nairn. It is claimed, however, that there are two objections to Nairn's claim :

*First*, that he is not such a person as could receive a benefit under the rules of the corporation.

*Second*, that no appointment ever became operative.

The circuit court for the county of St. Clair ordered the money to be paid to Nairn. Mrs. Richardson appeals on her own behalf. The complainant appeals, claiming that certain provisions of the decree are injurious, as changing the conditions on which complainant can be bound.

The constitution of the order, as last adopted in May, 1884, is very explicit that benefits are to be paid, on behalf of a member, "to such member or members of his family, or person or persons dependent on him, as he may direct and designate by name," etc. The change of beneficiaries was to be made by a member, "while in good standing," surrendering his certificate, and receiving a new one payable as he shall have directed; "said surrender and direction to be made on the back of the benefit certificate surrendered, signed by the member, and attested by the reporter under seal of the lodge." Const. art. 9, § 5.

It appears that under a Kentucky charter, and under the constitution as it stood previous to 1884, the benefits could be made payable to his family, or as the member should direct. This, apparently, would have made Nairn a competent beneficiary, if we can regard these constitutions as controlling the contract. But this benefit is payable by a corporation of the State of Missouri, and the laws of that state very clearly and expressly forbid corporations of this sort from paying benefits to any but the member's family or dependents. Rev. St. Mo., p. 179, § 972. This prohibition is strengthened by some further provisions, making it unlawful to issue policies of life insurance, or for the benefit of the members themselves in any shape. Section 973.

The restrictions imposed by the laws of Missouri cannot be abrogated or changed by the corporation, and it cannot subject itself to any outside control which will override the laws of its organization as a corporate body.

The intent of the prohibition is clearly to shut out all persons who are not actual relatives, or standing in place of relatives in some permanent way, or in some actual dependence on the member. While the relations between Traver and Nairn were very intimate, they do not fairly come within the designation of family relations. If there was any dependence, Traver, and not Nairn, was the dependent person. But, taking Nairn's own answer and testimony together, it is shown that he expected, under the alleged arrangement with Traver, to apply this fund, not only to the payment of other debts, but also to payment to himself as a creditor, leaving such surplus as he chose to leave to one of his own children. The purpose of Traver thus indicated was not to provide a benefaction to a member of his family, or person dependent, but to use the fund to pay debts—a purpose which is honest, but which is entirely foreign to the benevolent objects of the association, which exclude the member from appropriating the fund to his individual purposes.

The other objection, however, is one which cannot be surmounted. The written contract, so far as it goes, is the measure of the rights of all parties. By the express terms of that certificate, it is provided that Mrs. Richardson shall have the money unless the certificate is surrendered and canceled and a new one issued; and the form of surrender printed on the back conforms precisely to the clause also inserted in the constitution, requiring every surrender and new direction to be signed by the member, and attested by the reporter under the lodge seal, he being the officer into whose hands it must be placed for transmission to the home office for reissue.

Under this arrangement, the purpose is evident that the corporation shall always be in written contract relations with a member who is alive and in good standing, which

will show them the identity of the beneficiary to whom they are liable. It is possible—and we need not consider under what circumstances—that when a member has executed and delivered to the reporter his attested surrender, in favor of a competent beneficiary, his death, before a new certificate is rendered, may leave his power of designation so far executed as to enable a court of equity to relieve against the accident. But in the present case, the facts show conclusively that Traver did not mean to have any surrender made until after his death. Nairn was not authorized to open the envelope or handle any of the papers while Traver lived, and Traver retained complete control of them. No one was authorized, while he lived, to take any steps to complete a surrender.

The attestation of the reporter was not a mere ceremony. In this very case, issue is made on the voluntary character and legal validity of Traver's alleged execution of the various papers. We are not disposed to consider that view of the case. But it is plain that the formality of appearing personally before an officer of the corporation or its lodges, and having the execution seen and attested by such an officer, would be a valuable guard against fraud and forgery, which was not provided for without some intention. In our opinion, Traver never surrendered this certificate, and never attempted to surrender it, within either the letter or the spirit of its conditions, and the right of Mrs. Richardson remains as originally provided for.

We do not, in reversing the decree, mean to impugn any one's integrity. We dispose of the case purely on legal grounds, which leave us, in our opinion, no choice in the matter. The contract is one which the parties made on their own conditions, and every one is bound by them.

We do not regard the complainant's appeal as within the rules of interpleader, and, while we shall not disturb the allowance of $50 made below, we can grant no further costs to it on appeal. The learned argument of the distinguished counsel representing it was instructive, but bore entirely in favor of one of the two defendants.

Mrs. Richardson is entitled to costs of both courts against Nairn, and to a decree for the money in controversy.

The decree below must be reversed, and a decree entered here in her favor.

The other Justices concurred.