GRAND LODGE OF ANCIENT ORDER OF UNITED WORK-
MEN v. FISK.

1. MUTUAL BENEFIT ASSOCIATIONS — BENEFICIARIES — PERSONS ELIGIBLE.
   Under the constitution of a mutual benefit society, providing that the beneficiary should be a member of the family of the insured, or a person related to him by blood, the grand-children of a sister of the insured were eligible, notwith-standing they were to take through a trustee.

2. SAME—CHANGE OF BENEFICIARY.
   A provision in the constitution of a mutual benefit society that any member "may" change his beneficiary "in the follow-ing manner, viz., he shall" comply with specified formalities, is mandatory, and a compliance by the member essential to effect such change, in the absence of circumstances render-ing the same impossible.

3. SAME—DESIGNATION BY WILL.
   Thus, where the constitution contained such provision, and also provided that, if, the beneficiary should die during the lifetime of the member, the benefit should be paid to the latter's heirs; and the member, a few days after the death of his beneficiary, executed a will by which he sought to dis-pose of the benefit, and, though he lived eight months there-after, made no attempt to change the beneficiary in the manner prescribed by the constitution, the certificate being found among his effects after his death,—*held*, that his heirs were entitled to the fund as against the legatee.

Appeal from Wayne; Frazer, J. Submitted December 7, 1900. Decided April 25, 1901.

Bill of interpleader by the Grand Lodge of the Ancient Order of United Workmen of the State of Michigan against Charles H. Fisk, executor of the last will and testament of James Lount, deceased, Catherine McCall, trustee under said will, and Herbert J. Lount, to determine the right to the proceeds of a benefit certificate. From a decree in favor of defendant McCall, defendant Lount appeals. Reversed.

*Thomas T. Leete, Jr.,* for complainant.

*Washington I. Robinson,* for defendant McCall.

*Clark, Durfee, Allor & Marston,* for appellant.

HOOKER, J. The Ancient Order of United Workmen is a mutual benefit society. Section 15, art. 5, of the constitution, provides:

"Each and every member shall designate the person or persons to whom the beneficiary fund due at death shall be paid, who shall, in every instance, be one or more members of the family of the member, or some person or persons related to him by blood, or who shall be dependent upon him."

Sections 16 and 17 are as follows:

"SEC. 16. If one or more of the beneficiaries shall die during the lifetime of the member, the surviving beneficiary or beneficiaries shall be entitled to the benefit equally, unless otherwise provided in the certificate; and if all the beneficiaries shall die during the lifetime of the member, and he shall have made no other direction, the benefit shall be paid to his heirs at law, and, if there be none such, then the benefit shall revert to the beneficiary fund of the grand lodge.

"SEC. 17. Any member desiring to change his beneficiaries may do so in the following manner, viz.: He shall fill out the blank form on the back of his beneficiary certificate authorizing the change. He shall have his signature attested by the recorder of his lodge, and the seal

of the lodge attached thereto. When this is done he shall deliver his beneficiary certificate to the recorder of his lodge, together with a fee of fifty cents. The recorder shall forward the said certificate and fee to the grand recorder, who shall make a record of the change on the books of the grand lodge, and shall issue a new certificate in lieu thereof, payable as directed on the back of the surrendered certificate. The new certificate shall bear the same number as the old one, which shall be safely filed and preserved."

James Lount was a member of the order, and held a certificate for $2,000, payable to his wife. She died, and a few days later he made a will, by the terms of which he gave all of his real estate to Herbert J. Lount, his grandson and only heir. The will provided further:

"I give and bequeath to Catherine McCall, wife of my nephew, Frederick W. McCall, as trustee for the children of said Catherine and Frederick W. McCall, all personal property and money that shall remain after the payment of the above legacies, including all notes, bills, and insurance policies, and the proceeds thereof. It is my will that the said Catherine McCall shall have the use of and income from the said property and moneys during her life, and that at her death the principal thereof shall go and be paid to the children of said Catherine and Frederick W. McCall, share and share alike."

Mr. Lount died on February 13, 1899, and both Herbert J. Lount and Mrs. McCall claimed the amount of the benefit, whereupon the order filed this bill of interpleader. An interlocutory decree for the complainant was made, and a hearing was had between the defendants. The evidence shows that the certificate was found among the effects of the testator.

Upon the part of Herbert J. Lount it is contended that the will was ineffective to transfer the certificate, for the reasons:

1. That it could only be lawfully transferred in the method pointed out in section 17, above quoted.

2. That the legatees were not persons to whom it was competent to transfer the certificate, under the terms of the constitution of the order.

We understand that the beneficiaries for whom Mrs. McCall was to receive this fund were the grandchildren of testator's sister, and were therefore persons "related to him by blood," and eligible to receive this fund, under section 15 of the constitution of the order. The fact that it was to be put in the hands of a trustee should not deprive them of it.

It is urged that the court should hold that the attempted transfer by will is invalid, and that such certificate could be transferred in no other manner than that pointed out in section 17 of the charter. We have already seen that the constitution provides for a change of beneficiary. The language is, "Any member desiring to change his beneficiaries may do so in the following manner." The manner is then prescribed; *i. e.*, he *shall* fill out a blank on the back of the certificate; he *shall* have his signature attested by the recorder of the lodge, and the seal attached; he *shall then* deliver the certificate to the recorder, with a fee. After these things are done, a new certificate issues. It has been held that this provision is directory. Where a by-law provided that "members may at any time, when in good standing, surrender their certificate, and have a new one issued, payable to such beneficiary or beneficiaries, dependent upon them, as they may direct, upon payment of a certificate fee of fifty cents," a member took a policy payable to his parents, and subsequently made a will bequeathing the proceeds to his wife and children, and soon afterwards died. The court said:

"A method by which he [the member] may accomplish it [the change in beneficiaries] to the satisfaction of the order is pointed out, * * * but we do not consider this as exclusive of all other ways of effecting the same object. The design of this section is to protect the interests of the corporation. The company are entitled to know who are the parties entitled to the benefit money, and this is an effectual and certain means of giving that information. But, like all such provisions in the by-laws of private corporations, it may be waived at the option of

the corporation, being for its benefit alone." *Splawn* v. *Chew*, 60 Tex. 532.

In *Manning* v. *Ancient Order of United Workmen*, 86 Ky. 136 (5 S. W. 385, 9 Am. St. Rep. 270), the question arose in this way: A member had a certificate issued, payable to his brother, and left it in charge of his (subordinate) lodge. Upon marriage he inclosed his dues to the proper officer, with a written request to send policy made out to Mrs. Josie A. Manning, his wife. A law of the order provided:

"Any member holding a beneficiary certificate, desiring at any time to make a new direction as to its payment, may do so by authorizing such change in writing on the back of his certificate in the form prescribed, attested by the recorder, with the seal of the lodge attached, and by the payment to the supreme or grand lodge of the sum of fifty cents; but no change of direction shall be valid or have any binding force or effect until said change shall have been reported to the supreme or grand recorder, the old certificate, if practicable, filed with him, and a new beneficiary certificate issued thereon."

The fee not being paid, the proper officer wrote to the member to forward it, but he died without doing so. The court held that a certificate issued after his death to Mrs. Manning was valid, saying that, "if the lodge saw fit to waive these formalities, it did not lie in the mouth of a third party to complain."

The case cited from Texas is confessedly one of first impression, and, as said in that case, such authorities are few. We have found only these two cases that distinctly so hold. Upon the other hand, there are many which hold that the provision is a material part of the contract, and mandatory, and that an attempt by a member to make a change in beneficiary in any other than the designated manner is wholly ineffectual. In Kansas a statute authorized the issue of a new certificate to a nominee of the member on proof by affidavit of the death of the original beneficiary. A member undertook to dispose of the benefit by will, and it was held ineffective. The court

held that the contract was made in contemplation of the statute, and applied the maxim, "*Expressio unius est exclusio alterius;*" adding, "In no event was it payable to him, nor could it become a part of his estate; and, having no interest in the fund, what was there for him to bequeath?" *Olmstead* v. *Benefit Society,* 37 Kan. 93 (14 Pac. 449). See, also, *Titsworth* v. *Titsworth,* 40 Kan. 571 (20 Pac. 213).

In the case of *Renk* v. *Herrman Lodge,* 2 Dem. Sur. 409, a member, just before his death, gave the following direction:

"*To Herrman Lodge, etc., Officers and Members:* Please take notice that I do hereby revoke the direction given in my benefit certificate in reference as to whom the money should, after my death, be paid, and I do hereby order and direct that the money be divided as directed by me in my last will and testament, executed by me on the 17th of October, 1882."

This direction was signed by the member. The court held that it and his last will were inoperative and ineffectual; that the change could only be made by a compliance with the terms of the by-laws.

A certificate was payable to the wife or to the children of the member, or, if he left neither wife nor children, to such person "as he may have formally designated to his said lodge prior to his decease." He left neither wife nor children. By his last will he designated his brother as the beneficiary of the insurance; but the court held that this was not such a designation as was contemplated by the contract, and that the fund lapsed to the society. *Hellenberg* v. *District No. 1, I. O. B. B.,* 94 N. Y. 580; *Thomas* v. *Thomas,* 60 Hun, 382 (15 N. Y. Supp. 15), 131 N. Y. 205 (30 N. E. 61, 27 Am. St. Rep. 582); *Rollins* v. *McHatton,* 16 Colo. 203 (27 Pac. 254, 25 Am. St. Rep. 260).

A contract provided that the fund should go to certain persons in the order named, "unless otherwise ordered in writing by the deceased member; such order to be signed

by two witnesses and acknowledged before a justice of the peace." The member left a will by which he attempted to dispose of the fund. It was signed by two witnesses, but was not acknowledged by a justice of the peace, and it was held to be inoperative. The court said:

"The contract does not expressly allow the power of appointment to be exercised by an order executed in a manner deemed by a court or jury equivalent in utility to the prescribed form. The object of the association is the payment of a certain amount of life insurance after the death of each member; and it may reasonably be inferred that, for a substitutional appointment, a written and acknowledged order, signed by two witnesses, is required, not merely as evidence satisfactory to the payor, but as such a protection of each member, and the payees named in the contract, as the law provides for an owner of property and for his heirs in the execution of a will or codicil. It might be claimed that anything shown by competent evidence to have been regarded by the parties, when they made the contract, as mere matter of form, the law would not treat as matter of substance. But an acknowledgment of a substitutional order before a justice of the peace might in fact be a material safeguard for the member making it, and for the beneficiaries named in the rules and displaced by the order; and the contract does not authorize any tribunal to dispense with any proceeding exacted by the contract as a substantial security of the rights of those parties. If acknowledgment could be omitted as a useless form, there is no ground of law on which two witnesses, or a signed writing, could be required. The will is not such an order as the contract demands." *Mellows* v. *Mellows*, 61 N. H. 137.

See, also, *Highland* v. *Highland*, 109 Ill. 366; *Lamont* v. *Benefit Ass'n*, 30 Fed. 817; *Hotel-Men's Mut. Ben. Ass'n* v. *Brown*, 33 Fed. 11.

Our own case of *Supreme Lodge Knights of Honor* v. *Nairn*, 60 Mich. 44 (26 N. W. 826), sustains this doctrine. It is urged that this case was made to turn upon another point; but, while it was held that Nairn could not receive this benefit, because not a relative nor dependent, the court said:

"The other objection, however, is one which cannot be surmounted. The written contract, so far as it goes, is the measure of the rights of all parties. By the express terms of that certificate, it is provided that Mrs. Richardson shall have the money unless the certificate is surrendered and canceled and a new one issued; and the form of surrender printed on the back conforms precisely to the clause also inserted in the constitution, requiring every surrender and new direction to be signed by the member, and attested by the reporter under the lodge seal,—he being the officer into whose hands it must be placed for transmission to the home office for reissue. Under this arrangement, the purpose is evident that the corporation shall always be in written contract relations with a member who is alive and in good standing, which will show them the identity of the beneficiary to whom they are liable. It is possible—and we need not consider under what circumstances—that when a member has executed and delivered to the reporter his attested surrender, in favor of a competent beneficiary, his death, before a new certificate is rendered, may leave his power of designation so far executed as to enable a court of equity to relieve against the accident. But in the present case the facts show conclusively that Traver did not mean to have any surrender made until after his death. Nairn was not authorized to open the envelope or handle any of the papers while Traver lived, and Traver retained complete control of them. No one was authorized, while he lived, to take any steps to complete a surrender. The attestation of the reporter was not a mere ceremony. In this very case issue is made on the voulntary character and legal validity of Traver's alleged execution of the various papers. We are not disposed to consider that view of the case. But it is plain that the formality of appearing personally before an officer of the corporation or its lodges, and having the execution seen and attested by such an officer, would be a valuable guard against fraud and forgery, which was not provided for without some intention. In our opinion, Traver never surrendered this certificate, and never attempted to surrender it, within either the letter or the spirit of its conditions, and the right of Mrs. Richardson remains as originally provided for."

This case would probably be considered conclusive by counsel but for some other and later cases. In *Catholic*

*Mut. Ben. Ass'n* v. *Priest,* 46 Mich. 429 (9 N. W. 481), the disposition of a fund was sustained, but the court expressly said:

"We are unable to find anything in the act under which the complainant company was organized, or in the rules appearing in the record, which would take away from John Priest the right and power of disposing of this fund by last will and testament in the ordinary manner."

This case contains· an intimation that "very clear and binding provisions must be shown, to deprive a person of the right given him by the laws of the land to dispose of such a fund by his last will." This, however, was, at most, a dictum, and the later case of *Supreme Lodge Knights of Honor* v. *Nairn, supra,* negatives any inference against the general rule to be drawn from it.

In *Grand Lodge A. O. U. W.* v. *Child,* 70 Mich. 163 (38 N. W. 1), the certificate was lost, and the court held that in such a case a statement and proof of such fact, with an application for a change of beneficiary, made to the order during the lifetime of the member, should have been treated as sufficient; and after the member's death, upon interpleader, the court sustained the claim of the beneficiary designated by will that there was a substantial performance during the life of the member.

The case of *Grand Lodge A. O. U. W.* v. *Noll,* 90 Mich. 37 (51 N. W. 268, 15 L. R. A. 350, 30 Am. St. Rep. 419), goes a step further, and holds that where, by reason of the fact that the certificate· is lost or mislaid, it is beyond the power of the member to comply with the provisions of section 17 of the constitution, although he has made no attempt to procure a new certificate during his life, the provisions of a will designating a new beneficiary should be enforced.

Again, the case of *Grand Lodge A. O. U. W.* v. *Kohler,* 106 Mich. 121 (63 N. W. 897), sustained a will where the original beneficiary had the certificate in her custody and refused to deliver it, she having been divorced from the member after receiving it. In this case an appli-

cation to the lodge by the member for a new certificate had been refused before he made the will.

My Brethren are of the opinion that the *Case of Nairn* should not be treated as overruled by these cases, which they consider exceptional, because of the inability of the member to comply with the terms of his contract. The case before us is not within the exception, as the certificate was found after his death, and, while the will was made only *96 hours after the decease of the original beneficiary,* he lived 8 months after her death. It cannot be said, therefore, that such performance was impossible, as in the cases cited.

Having reached the conclusion that the beneficiary was not changed by the will, it follows that it must go to the member's heir, Herbert J. Lount, under section 16 of article 5 of the constitution and by-laws of the order, which provides that, if all the beneficiaries shall die during the lifetime of a member, the benefit shall be paid to his heirs at law, and, if there be none such, then the benefit shall revert to the beneficiary fund of the grand lodge.

The decree of the circuit court is reversed, and a decree will be entered in conformity to this opinion, with costs of both courts against the defendants and appellees.

The other Justices concurred.