KIMBAL v. THE NATIONAL LIFE & ACCIDENT INSURANCE COMPANY, ET AL.

---

(March 26, 1928. Opinion and Decree.)

---

*(Syllabus by the Court)*

1. **Louisiana Digest—Insurance—Par. 152.**
Where the insured in an industrial policy has done all that is required of her to effect a change of beneficiary and where provisions of policy as to change of beneficiary are not proved and all that remains to be done is apparently only a ministerial act by the office of the company the change will take effect, though the formal details were not completed before the death of the insured, which happened almost seven weeks after policies were delivered to agent for endorsement.

Appeal from Civil District Court, Div. "B." Hon. Mark M. Boatner, Judge.

Action by Amelia Kimbal against the National Life & Accident Insurance Company.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Dart & Dart; Leo L. Dubourg, of New Orleans, attorneys for plaintiff, appellant.

Frank B. Smith, of New Orleans, attorney for Mary Reuben, defendant, appellee.

Sol S. Goldman, of New Orleans, attorney for National Life and Accident Insurance Company, defendant, appellee.

JONES, J. This is a suit on two policies of insurance known as "industrial policies," aggregating Three hundred thirty-one ($331.00) Dollars, the premium on one being Fifteen Cents per week and the other Thirty Cents per week. Plaintiff alleges that Rena Bell, deceased, took out the two policies and originally designated Amelia Kimbal, plaintiff herein, as beneficiary. Later she moved to the house of the other claimant herein, Mary Reuben, and at that time changed the beneficiary to Mary Reuben. Still later Rena Bell moved back to the house of Amelia Kimbal, and, desiring to change the policies in favor of Amelia Kimbal, about the latter part of January, 1923, she signed the necessary requests for that purpose and delivered the applications and the two policies to the agent of the insurance company, who sent them on to the Shreveport office; Rena Bell died about March 19, 1923, before policies were returned by the agent with beneficiary changes, although the agent, when he received the policies agreed on behalf of the company to have change made and policies returned; Mary Reuben was also claiming the insurance money and this suit was brought against both the insurance company and Mary Reuben.

The insurance company in its answer, after saying:

" * * * that the said policies with request for change of beneficiary duly executed by the assured were delivered by the assured to respondent's Alexandria, La., agent who forwarded same to the respondent's Shreveport, La., office and by the latter office to be sent to respondent's home office at Nashville, Tenn., there to have the change of beneficiary endorsed on the policies, but that the policies and requests for change of beneficiary were lost in the mails and never reached the home office * * * ,"

declared they were stake holders and deposited Three hundred thirty ($330.00) Dollars in registry of the Court.

Mary Reuben, after denying in her answer for want of information the various allegations as to original issuance of policy with name of plaintiff as beneficiary, averred that she was made the beneficiary in the policies, because plaintiff was indebted to her for board, lodging, nursing and doctor's care, in the sum of Five hundred twenty ($520.00) Dollars.

There was judgment below dismissing suit as to insurance company and giving the money to Mary Reuben. Amelia Kimbal has appealed.

Although the insurance company claims that the policies never reached the home office there is no evidence in the record as to this. The uncontradicted evidence in the record of three witnesses is as follows:

The two policies, with written request for change of beneficiary from Mary Reuben to plaintiff, made out on the regular forms of the company, were delivered about January 31, 1923, to the local agent of the company, D. P. Eckert by name, at the home of plaintiff in Colfax, La., to be sent by him at once to the home

office in Nashville, Tenn., for endorsement and then to be returned to insured, who was at that time living with plaintiff and suffering with the illness which later caused her death at the same place on March 18th. Attached to the petition is a blank form of the company to be used for change of beneficiary and both witnesses swore that a similar form was used by the insured.

Over the objection of counsel the lower judge correctly admitted both plaintiff and her husband to testify, as against the insurance company, but not Mary Reuben, that the local agent, Eckert had stated to the insured in their presence some two weeks after he took the policies and the application, that the policies had reached the home office, had been changed there and lost on the way back to him. These witnesses also testify that the sister, who had been taken ill in New Orleans, wrote for assistance and her brother-in-law came at once and took her from Mary Reuben.

Intervenor, Mary Reuben, swears that the insured lived with her in New Orleans from May 25 to November 18, 1922, though she was very ill at the time, she was getting no assistance from her husband, and was consequently entirely dependent upon her for board, lodging, nursing, medicine and physician's service, that she paid to Dr. Gaines Thirty ($30.00) Dollars for his service and offered in evidence a receipt for that amount, dated April 6, 1925, for services rendered the insured in 1922; that she charged for all her services Twenty ($20.00) Dollars per week for twenty-six weeks, making altogether Five hundred twenty ($520.00) Dollars, which had not been paid, though the insured had of her own accord while staying with her changed the name of the beneficiary from plaintiff's to hers. In this testimony defendant was confirmed

as to her services and as to condition of the insured by Lorella Byrd, who had helped to nurse the invalid at times.

Insured's husband swore that she had only been at Mary Reuben's two weeks when the husband of plaintiff, the insured's brother-in-law, came to New Orleans from Colfax and carried her back to his home, also Mary Reuben had been paid by another insurance company enough in sick benefits due the insured to reimburse her for all expenses.

In the record are two certificates, each dated June 7, 1923, each signed by president and secretary of insurance company, stating that one policy had been issued on December 13, 1920, and one on April 3, 1922, and that each certificate had been issued upon an application alleging that the policy had been lost or destroyed.

Here the evidence shows clearly that the insured had done all she could possibly do to have the beneficiary changed almost seven weeks before her death and there is no proof in the record as to what provisions the policies contained with reference to change of beneficiary. As she had made out applications for this change with the approval of the agent of the company, and had delivered them to the agent for transmission to the home office, certainly the mere stamping of the change on the policy was a mere ministerial act, for the non-performance of which she should not suffer.

The rule is well stated in Cooley's Briefs on the Law of Insurance, as follows:

"If, however, the insured has done substantially all that is required of him to effect a change of beneficiary, and all that remain to be done are the ministerial acts of the officers of the association, the change will take effect, though the formal details were not completed before the death of the insured."

See also Joynes on Insurance, Sec. 751, Vol. 2.

The following authorities sustain this view:

Supreme Court, I. O. F. vs. Frise, 183 Mich. 186: "Where the holder of a life insurance certificate has the right to change the beneficiary named therein at his pleasure, and makes endorsement of the change upon his certificate in the manner and form required by a by-law of the company, which received it the day before his death, the change is effectually made notwithstanding his death occurs before the change is endorsed by the company upon the certificate."

Garrett vs. Garrett, 31 Cal. App. 173. The United States Court for the Eastern District of Michigan followed the same rule in the case of Supreme Conclave vs. Cappella· (C. C.) Fed. 1, holding:

"The general rule that the insured is bound to make such change of beneficiary in the manner pointed out by the policy and by-laws of the association is subject to three exceptions * * * (3) If the insured has pursued the course pointed out by the laws of the association, and has done all in his power to change the beneficiary, but before the new certificate is actually issued, he dies, a court of equity will decree that to be done which ought to be done, and act as though the certificate had been issued." Citing National Assn. vs. Kirgin, 28 Mo. App.; Mayer vs. Assn. 49 Hun. (N. Y.) 336 (2 N. Y. Supp. 79); Supreme Lodge vs. Nairn, 60 Mich. 44 (26 N. W. 826); Kepler vs. Supreme Lodge, 45 Hun. (N. Y.) 274.

In a comparatively recent case this Court held as follows:

"The first beneficiary in a life insurance policy, though having an insurable interest, cannot prevent the second beneficiary having a like interest from collecting proceeds of the policy, on the ground that the change was not endorsed on the policy, as required by the contract, if she refused to surrender the policy to the insured or to the company when notified by both of the second change."

Ahrens vs. First National Life Insurance Co., 6 La. App. 661.

The insurance company has answered the appeal and is asking that the judgment rendered herein be modified so as to allow its costs out of the insurance money.

To sustain this contention it quotes Section 6 of Act 123 of 1922, which provides that the applicant depositing the money shall not be required to pay any costs, except costs for service of citation on those who do not make any claim on fund.

As the policies were delivered to the agent of the insurance company almost seven weeks before the death of the insured, and as apparently no attempt was made by the agent to have duplicates issued or to remedy the evil apparently caused by it, we think the insurance company should pay its own costs.

Intervenor quotes two cases to sustain his contention that the proceeds of the policies should go to Mary Reuben, because the change of beneficiary had not been endorsed on the policies.

In the first case, N. Y. Life Ins. Co. vs. Murtagh, 137 La. 760, the decision is not applicable, because the policy in that case provided that *no change of beneficiary should take effect until notice thereof was endorsed on the policy by the company at the home office.*

Here provisions of policy on that point are not proved.

In the second case, Freund vs. Freund, 208 Ill. 189, the Court uses the following language:

"In the case at bar, the company, under the statute, was required to give its consent to the change, and under the contract

the company could only indicate its consent to such change by an endorsement in writing upon the policy at the home office. Certainly, the statute meant something when it stated that the right of the assured to change the beneficiary was dependent upon the consent of the company. The giving of consent is not a mere ministerial act, because it involves the exercise of judgment. We do not construe the New York statute as requiring the company to give its consent independent of the exercise of any judgment on its part whether it was right or proper to give such consent. Therefore, the act here required to be done by the company not being a mere ministerial act, the principle invoked does not apply."

Here there was no statute involved requiring the company to give its consent.

Furthermore, these were industrial policies and the purpose of industrial insurance has been stated as follows:

"Not to create a fund to provide further support and maintenance for the insured's family, but to provide a fund to take care of the insured during his last illness and to pay for his funeral."

Ball vs. Metropolitan Life Ins. Co., No. 7780, Court of Appeal.

That this is what the deceased intended is clearly shown by the manner in which she changed the beneficiary as she changed her place of residence.

The purpose of industrial insurance being considered, it follows logically that changes of beneficiary should be facilitated and that the requirements for effecting such change are not and should not be the same as in policies of ordinary life insurance.

For above reasons the judgment as to the insurance company is now affirmed and the judgment as to Mary Reuben is now reversed.

It is ordered, adjudged and decreed, that there be judgment herein in favor of the defendant, National Life and Accident Insurance Company and against the defendant, Mary Reuben.

It is further ordered, adjudged and decreed, that there be judgment herein in favor of Amelia Kimbal and against the defendant, Mary Reuben, decreeing the said Amelia Kimbal to be entitled to the sum of Three hundred thirty Dollars proceeds of the life insurance policies (No. A. 4883731 and No. E. 5370432 on the life of Rena Bell, in the National Life and Accident Insurance Company) herein deposited in the Registry of this Court, by the said National Life and Accident Insurance Company, on the 12th day of March, 1925.